PARTAIN et, Plaintiffs, v. BROOKLYN (City) et al., Defendants.

Common Pleas Court, Cuyahoga County.

No. 676617.   Decided December 2, 1955.

482

Norman C. Schwenk, Roland A. Baskin, for plaintiffs.
N. C. Brinsky, for defendant City of Brooklyn.
Calfee, Fogg, McChord & Halter, Cleveland, for defendant The Lamson & Sessions Company.

## OPINION

By BLYTHIN, J:

This is an action brought by three plaintiffs as residents, property owners and taxpayers of the City of Brooklyn, a municipal corporation operating under a charter adopted by its electors, effective as of January 1, 1952. Stated simply and in a word, the aim is to have the Court declare unconstitutional and ineffective an amending ordinance, No. 1955-59, passed by the Council of said city as an emergency measure on the 24th day of August, 1955, rezoning a section of the Westerly side of Tiedeman Road, so as to remove it from the "A" use classification (dwelling house) to the "E" use classification (industrial), designated in the general zoning and planning ordinance (No. 1940-19) of the city passed November 25th, 1940, amended from time to time, but still in effect as amended.

The petition sets forth the official connections of defendants John M. Coyne and Joseph E. Murphy as Mayor and Director of Public Safety, respectively, of said city and alleges defendant The Lamson and Sessions Company to be an Ohio corporation, private and for profit.

Plaintiffs allege in substance that said city has in effect a zoning ordinance, No. 1940-19, passed on November 25, 1940, dividing the municipality into use districts etc., except that some detail amendments

have been adopted since 1940, and that under it there were established five zones or districts expressive of uses to which premises may be put, as follows:—

"A" Dwelling House District.

"B" Apartment House District.

"C" Retail District.

"D" Commercial District.

"E" Industrial District.

That the city of Brooklyn has an area of approximately 5½ square miles and a growing population of approximately 10,000 people; is bounded on its North, East and West by the city of Cleveland, and on its South by the city of Parma, the dividing line being Brookpark Road.

That Memphis Avenue and Biddulph Road run through said city in an Easterly and Westerly direction; that Ridge Road runs in a Northerly and Southerly direction through said city from Brookpark Road North to the city of Cleveland and that Tiedeman Road runs in a general Northerly and Northeasterly direction from Brookpark Road North to Memphis Avenue, and that said thorofares serve said municipality as ingress to and egress from its principal centers and growing and developing areas.

That under said ordinance certain Class E districts have been designated within the city as shown on the zoning map and that the remainder of the territory within the city is zoned for residential use, meaning thereby single and two family dwellings, churches, schools, public libraries, parks, Hospitals and farms, except (1) a parcel 2000 x 1000 feet at the Northwest corner of Ridge Road and the Belt Line Railroad zoned for commercial use; (b) certain small areas zoned for retail purposes for the convenience and accommodation of the residential areas, and (c) a parcel 2000 x 1000 feet North of and adjoining Biddulph Road between the city of Cleveland and Ridge Road, zoned for apartment use.

That except for two small retail districts at the intersection of Tiedeman Road and Memphis Avenue; Tiedeman Road and Biddulph Road, the development of Tiedeman Road north of the Belt Line Railroad is entirely residential in character and that about 59 modern residences abut Tiedeman Road; that 18 of them were there prior to passage of the zoning ordinance, No. 1940-19, in 1940, and that 41 have been erected since and that the area is ideal for residential purposes; that the plaintiffs own their homes on said section of Tiedeman Road and that the values of their individual homes are $35,000 and $60,000.

That within 1955 defendant The Lamson and Sessions Company purchased a parcel of unimproved land bounded on the East by the Westerly line of Tiedeman Road; on the South by the Northerly line of the Belt Line Railroad; on the North by the home property of plaintiffs Partain and on the West by the boundary line between the city of Brooklyn and the city of Cleveland. The parcel has a frontage of about 1000 feet on Tiedeman, a varying depth averaging about 2600 feet and contains 61 acres.

Said parcel adjoins, as indicated, the Partain property and is near other homes on Tiedeman Road.

That opposite said Lamson and Sessions parcel, across Tiedeman Road, is a golf course and other property especially suitable for residential purposes.

That on August 24, 1955, the Council and officers of said city of Brooklyn rezoned the parcel of The Lamson and Sessions Company from the "A" Residential District to the "E" Industrial District by Ordinance No. 1955-59, passed as an emergency measure, thereby cutting off the right of referendum without just cause.

That said city of Brooklyn and its officers have issued a permit to said The Lamson and Sessions Company to erect an industrial structure on its parcel according to a plan for a factory and office building presented. which structure is to cost approximately $4,500,000.00; and that the change of zoning was approved by the Planning Commission.

That the zoning change has no relation to the public peace, health, safety or public welfare for the reason that its effect will be to decrease the value of all property on and about Tiedeman Road for residential purposes and that it does violence to the zoning plan originally adopted for the municipality and continued in effect until the present time, with the exception of the change now in issue in this cause, and is unfair to plaintiffs and others who have been encouraged to invest their money in valuable homes relying on the zoning regulations in effect.

That since the year 1940 there have been no changes in the Lamson and Sessions parcel, nor in the surrounding property such as to warrant a rezoning of any from a residential to an industrial use and that Ordinance 1955-59 constitutes spot zoning and discriminates in favor of The Lamson and Sessions Company and was passed for its economic advantage and private benefit in disregard of the public interest.

That the Belt Line Railroad is a natural barrier between the industrial section to the South of it and the residential section to the North of it and that there has never heretofore been established an industrial district immediately North of it, and that to create one now will destroy the barrier and create an industrial district without any necessity therefor due to the fact that there now exists ample industrially zoned property available within the city.

That even though The Lamson and Sessions Company parcel adjoins land within the City of Cleveland zoned for industrial use there is, in fact, no such use being made thereof.

Due to the facts alleged and reasons stated the plaintiffs claim Ordinance No. 1955-59 to be unconstitutional and void and aver that they are without an adequate remedy at law and will be irreparably damaged unless the Court declares said ordinance void and grants them the relief to which they would be entitled upon such declaration.

In its answer the city of Brooklyn admits generally the facts stated by plaintiffs in their petition anent the city, its territory and the fact that the municipality has been zoned since 1940, with periodical amendments, and that Ordinance 1955-59 was passed by the Council of said city. It denies the allegations of the petition directed to the claim of invalidity of Ordinance No. 1955-59, raising issue squarely on that question.

In its answer The Lamson and Sessions admits, with slight deviations of no vital importance, the facts admitted by the city of Brooklyn and denies any invalidity or irregularity in the proceedings of the Council of said city or in the actions of its officials, thereby joining the city of Brooklyn in joining issue on the validity of Ordinance 1955-59.

The parties have entered into a stipulation, filed herein, admitting authenticity of certain documents and exhibits presented without necessarily admitting their effect but not including much of an important character additional to the pleadings or that which has been fully covered by oral evidence as shown by the record.

The Court will not here burden this memorandum with a recital of the stipulations, but deems it necessary to mention the following:

Stipulation 3. As no issue is raised as to the notice referred to in this stipulation it was not deemed necessary by the Court, on trial, to formally produce any proof of same.

Stipulations 11 and 13 disclose that defendant The Lamson and Sessions Company purchased, in addition to the 61 acres in the city of Brooklyn, and simultaneously, an additional and adjoining parcel of 31 acres within the city of Cleveland, thereby making a total purchase of 92 acres by deed, Exhibit E, and that the 31 acre parcel within the city of Cleveland is zoned for industrial use.

Stipulation 12 discloses that The Lamson and Sessions Company has deeded to the city of Brooklyn a parcel of its land 25 feet in width on the Westerly side of Tiedeman Road and extending back, or Westerly, of equal width to the Westerly line of the City and being the Northerly 25 feet of said 61 acre parcel. See Exhibit F. This 25 foot parcel is claimed by the city to be, and has been referred to as, a buffer zone between the newly created industrial district and the private property immediately North of it.

Stipulation 19. Plaintiffs objected to the relevancy and competence of Exhibits H, and I, as evidence of values. The Court deems the objection valid and gives them no consideration in this cause.

The testimony in this case, while in considerable detail, does not add much to what is perfectly apparent from the pleadings, stipulations and exhibits.

The claim of invalidity of Ordinance 1955-59, asserted by plaintiffs, is based on the following grounds:—

(1) The ordinance was passed as an emergency measure, thereby defeating the right of referendum.

(2) It does violence to the original planning and zoning of the municipality as contemplated by Ordinance 1940-19 and greatly decreases the values of the properties of plaintiffs and others affected by the change.

(3) There has been no change in the Lamson and Sessions parcel since 1952 (92 **Oh Ap** 351); and ordinance 1955-59 constitutes spot zoning.

It is not claimed that the provisions of law were in any wise violated in the steps necessary to the enactment of Ordinance 1955-59 except as above recited so that no issue of mechanics is raised. The real issue is one of principle and authority.

For reasons already indicated the Court will not comment in detail on the evidence at this point, but will deal with the questions raised in their order.

(1) THE ORDINANCE WAS PASSED AS AN EMERGENCY MEASURE, THEREBY DEFEATING THE RIGHT OF REFERENDUM.

It was asserted by defense counsel, upon argument, that there has in fact been a referendum, in effect, in this case. The issue was used in the political scrimmage of the municipal election of November 1955 and the people of the city returned to office the people who brought about the zoning change. This is not, of course, the right of referendum claimed to have been violated. If it amounted to a referendum at all it was a partial and mixed one at best, and certainly cannot be said to have been conclusive on any issue here.

It is important to note that the plaintiffs do not allege or claim fraud, collusion, or dishonest conduct, nor is there any evidence that citizens were not given an opportunity to be heard. They were heard in open meeting with the Mayor and all members of Council present. They also disclosed to the officials their possession of a petition signed by some 150 or more citizens voicing objection to the change. The members of Council passed the ordinance by a vote of six to one.

Secs. 731.29 and 731.30 R. C., specify the matters subject to referendum and, inter alia, §731.30 R. C., provides that excluded from such matters are:

"emergency ordinances or measures necessary for the immediate preservation of the public peace, health or safety in such municipal corporation, shall go into immediate effect. Such emergency ordinances or measures must, upon a yea and nay vote, receive a two-thirds vote of all the members elected to the legislative authority, and the reason for such necessity shall be set forth in one section of the ordinance or other measure."

Ordinance No. 1955-59 is in evidence by a certified copy, Plaintiff's Exhibit B, and from it we find that about ten changes have been made since the original zoning (1940); seven of those changes being to E (industrial) use, one to A, one to B and one to C use. A glance at the zoning map as originally adopted, Exhibit K1, and at the map reflecting the changes, including the one here in issue, Exhibit K8, shows the effect of these changes—most of them being in the general area of the parcel here in question.

The ordinance, No. 1955-59, recites the claimed reason for the emergency feature.

The courts have spoken clearly on the subject of emergency legislation and the Supreme Court of Ohio has, in effect, eliminated the emergency clause as a ground of illegality even in those cases where it is disclosed that no emergency actually exists.

Syllabus 4 of Youngstown v. Aiello, 156 Oh St 32, is as follows:—

"4. Where a purported emergency ordinance enacted by the council of a municipality does not comply with the mandatory provisions of §4227-3 GC, and therefore does not go into immediate effect and no proceeding to institute a referendum or other challenge is made until

after the expiration of the time limited for such attack, such ordinance takes effect in the same manner as other regular ordinance. (**Vansuch. Dir., v. State, ex rel. Fetch, 112 Oh St 688,** approved and followed.)

The period within which a referendum petition might have been filed on the ordinance here in question has long since expired; no petition has been filed and it follows that the ordinance is now immune from successful attack on the emergency clause feature.

(2) IT DOES VIOLENCE TO THE ORIGINAL PLANNING AND ZONING OF THE MUNICIPALITY AS CONTEMPLATED BY ORDINANCE NO. 1940-19 AND GREATLY DECREASES THE VALUES OF THE PROPERTIES OF PLAINTIFFS AND OTHERS AFFECTED BY THE CHANGE.

Zoning is a practice born within our own time in the United States, and, like all restrictions and reforms in a free government is a matter calling for reasonable stability without absolute rigidity. It is not like the laws of the Medes and Persians—immutable. He would be a wise person indeed who could have foreseen in 1940 what the Brooklyn Village of that day would be in 1955. Brooklyn as a Village of that day and the Brooklyn that is now a city had and has authority under constitutionally delegated powers to develop and plan its territory and affairs in the manner thought to be in the best interests of its inhabitants, their property and general welfare. Those interests, however, are subject to variation, shifts, enhancement or contraction by factors moving beyond the geographical limits of Brooklyn. Movements within the metropolitan community of which Brooklyn is a part can well be such as to prompt the city, through its representatives, to adjust regulations within the city to bring them into a reasonable degree of harmony with the conditions surrounding the city and which, like the weather, bear down on all alike. Not in the history of our nation has there been a decade to equal the last decade in expansion of travel, industry and common interests or in the decentralization of what theretofore had seemed to be centrally and permanently fixed in the core of metropolitan centers. Public officials must recognize these movements and courts, in passing judgment on the conduct of such officials, must be permitted, to some extent, to take judicial notice of them. Brooklyn, located on the Southwesterly edge of the city of Cleveland, has seen a mammoth center of industry move out just beyond its borders on the West in particular, and it is not only rational but probably essential that Brooklyn periodically re-examine its position in the light of the events and of their effects upon it, its citizens and their interest. Memphis Avenue and Brookpark Road are the only main thorofares running through the city of Brooklyn in an Easterly and Westerly direction, and it is a matter of common knowledge that Brookpark Road has within the last decade become a thorofare of importance far beyond the most optimistic prognostications of the wisest seers in the community. This community importance is not caused by Brooklyn alone, but Brooklyn, its thorofares, its traffic problems and its general community interests are affected by it.

In evidence in this cause, Exhibits K1 to K8, both inclusive, are the zoning maps in order as to date and reflecting the zoning as originally established in 1940 and as changed from time to time to the present date.

Brookpark Road forms the Southerly boundary of the city of Brooklyn.

To the North of it, and running generally, not actually, parallel with it about 1000 feet to the North is the Belt Line, so-called, of the New York Central Railroad. Under the original ordinance, No. 1940-19, the entire frontage on Brookpark Road, and extending the total distance back to the Railroad, was zoned for A (residential) use excepting a small parcel at the Westerly end of the then Village zoned for E (industrial) use, a small parcel approximately half-way between Ridge Road and Tiedeman Road zoned for D (commercial) use and the corners of Ridge-Brookpark and Ridge-Tiedeman zoned for C (retail business) use. These variations in the original ordinance undoubtedly did nothing more than recognize the then existing uses of the excepted parcels. See Exhibit K.1.

Since that time the entire frontage of Brookpark Road from the Westerly limits of the City, and extending back to the Belt Line Railroad, to the intersection of Tiedeman Road has been changed to an industrial use zone and the section zoned for such use midway between Ridge and Tiedeman Roads has been more than doubled. The residential character of Brookpark Road has been completely changed by developments in the general area and it is rational to believe that the entire frontage of Brookpark Road within the city of Brooklyn and extending back to the Belt Line Railroad will be rezoned to industrial use as rapidly as acceptable industry offers to locate on it.

It is claimed here that there has heretofore been no industrial use zone North of the Belt Line Railroad and South of Memphis Avenue between Ridge Road and Tiedeman Road and that the Belt Line Railroad forms a natural barrier between the Brookpark Road industrial zone and the residential zone North of the Belt Line. The evidence is to the effect that the Belt Line Railroad is on a raised bank 15 or 20 feet above the ground level of the land immediately adjoining it on the North. A railroad must certainly be classed as an industrial operation and it can hardly be claimed to be an inviting feature to any person or persons seeking a location for a residence. It was also established that in the 15 years which have elapsed since the passage of Ordinance 1940-19 not a single application has been filed for a permit to erect a residence on the 1000 or 1100 feet of frontage on the Westerly line of Tiedeman Road of the parcel herein under special notice and it is not claimed that there is any residence of any kind across the road (Tiedeman) from it. Quite a sizeable parcel on the Northerly side of the Belt Line Railroad and fronting on Ridge Road was a commercial use zone in 1940 and still is. See Exhibit K.1 and K.8.

A glance at Exhibit K.8, and at the parcel here involved in particular does not in and of itself indicate violence to the original plan and, while it is not the Court's function to do any planning, it can well be that both sides of the Belt Line Railroad for some distance North will naturally develop into industrial and commercial use. The parcel now in issue does not actually break "into" any residential occupancy— it merely comes to it from a railroad occupancy and to assume and say that it is more damaging to the residential section to the North than the railroad would be to dwellings that might be erected on the parcel would be to assume something that could furnish material for a very honest

difference of opinion and develop to be highly debatable. If that be true the decision is for legislative authority and not for the courts.

It is claimed that to devote the Lamson and Sessions parcel to industrial use would reduce the value of the properties of the plaintiffs. Values are not, in and of themselves, the test of validity of a zoning regulation. They may be factors for a legislative body to consider in arriving at its conclusions on the total merits in the interest of the community welfare as distinguished from the rights and interests of any one or more particular individuals. See 8 McQuillin on Municipal Corporations, Page 82, Section 25.44. Also **The Cleveland Trust Co. v. The Village of Brooklyn, 92 Oh Ap 351.**

In order to justify a court in invalidating an ordinance on a claim that there was violent diminution or complete destruction of value the proof would have to be of a high order. While not conceding value to be a test the evidence on that point in this case is most meager. It is uncontradicted. It consists of the opinion of two property owners who testify as owners, without being experts, that the values of their properties will be diminished. Plaintiffs allege in their petition that "they bring this action for themselves and on behalf of all other property owners, taxpayers and residents of said municipality similarly situated and affected by the allegations herein set forth;" but it is interesting to note that no property owner, taxpayers or resident came before the court to support the three owners (plaintiffs) of two dwellings when the record discloses the fact that there are about 60 dwellings on Tiedeman Road between the parcel in issue and Memphis Avenue. The presumption of validity which attaches to the acts of legislative bodies would certainly not be upset or offset by the evidence as to values shown on the record here.

3. THERE HAS BEEN NO CHANGE IN THE LAMSON AND SESSIONS PARCEL SINCE 1952 (92 Oh Ap 351) AND ORDINANCE No. 1955-59 CONSTITUTES SPOT ZONING.

Plaintiffs argued that there has been no change in the Lamson and Sessions parcel since the decision of the Court of Appeals in relation to it and reported in 92 Oh Ap 351. and that Hurd, J., deals with that subject and establishes the necessity for a change in the parcel before there can be a valid change in its zoning. This is what Judge Hurd stated, Page 365:—

"Up to the present time there have been no changes **in the conditions and circumstances surrounding plaintiff's** property which would justify **judicial interference** with the legislative process." (Emphasis supplied.)

The changes referred to do not necessarily happen to any particular parcel, but are, and perhaps must be, changes in the surroundings, the area or the entire community. It is made perfectly clear in the opinion that the judicial judgment is not to be substituted for the legislative judgment in any case in which the issue or matter is fairly debatable. This is a well recognized general rule, and thoroughly wholesome In the light of the march of industry into the Brooklyn area and the neighboring communities, the changes in the area, and those which must still

come, it cannot possibly be said that the future of a strip of land, wholly undeveloped, adjoining a railroad, is not a subject for wide difference of opinion and genuinely honest debate. It is interesting to note that a member of this court who heard the evidence in Cause No. 610,039, involving this very parcel, found it to be wholly unsuitable for residential use and suitable for industrial use. That decision was not reversed in **92 Oh Ap 351,** because the court's views were erroneous but because it was without **authority to legislate.** The trial court in that case decided that the parcel in issue here should—beyond debate—be zoned and used for industrial purposes. Its views, after full hearing, is a powerful indication that the issue is at least debatable. If debatable it is not for the courts. Is this spot zoning? The fact that only one parcel or ownership is involved does not ipso facto make the grade as spot zoning.

Yokely on Zoning Law and Practice, Vol. 1, page 202, Sec. 90:—

"The term 'spot zoning' is ordinarily used where a zoning ordinance is amended re-classifying one or more tracts or lots for a use prohibited by the original zoning ordinance and out of harmony therewith."

Higbee et al., v. Chicago, Burlington & Quincy R. R., 292 N. W., 320 (1940):

In this case it was held by the Supreme Court of Wisconsin that to re-zone a two acre parcel in a first class single family dwelling district might be classified as "spot zoning" but was not in this case due to the facts and circumstances there involved.

Bartram v. Zoning Comm., 68 A. (2) 303, Conn:

In this case the court held that to re-zone a lot in a residential district for erection of a shopping center was not "spot zoning" since it served the community interest.

It is clear from all the cases on spot-zoning that the test is still the general welfare of the community and that all the facts must be weighed. Each case must be judged on its own merits. In the instant case we do not have a small lot or area—61 acres are involved in one parcel, adjoining a railroad and adjoining another parcel zoned for industrial use in a section rapidly changing in character and with no residences adjoining the parcel other than on one side. While spot-zoning is invalid as a general proposition its invalidity, when found, must be based on all the facts of the situation and on a clear violation of established rights of others. We have no situation here which could justify a court in declaring Ordinance 1955-59 to be an invalid spot-zoning.

The Court has examined all the authorities cited on the hearing of the cause, and some additional, and in the light of those authorities and the facts in this cause is wholly unable to arrive at the conclusion that the question involved is not a debatable one and, therefore, one for the legislative authority of the city. Judge Hurd, in **92 Oh Ap 351,** has cited and brought together the important authorities on the issue here involved and has discussed them with perfect clarity. Following the rules discussed, the conclusions reached, and giving to the claim and evidence of the plaintiffs in this cause the most favorable view possible, the Court must hold that the re-zoning involved here was on a debatable matter, was not arbitrarily done and was a valid exercise of power vested in Council.

For the reasons stated the petition of the plaintiffs will be dismissed at their costs and an entry to that effect will be filed this date, and exceptions noted.