LOUIS LaCOURSE AND OTHERS v. CITY OF SAINT PAUL.
FULTON INVESTMENT COMPANY AND OTHERS, INTERVENORS.

200 N. W. 2d 905.

September 8, 1972—No. 43172.

*Berde, Leonard & Weinblatt* and *Sydney Berde,* for appellant Fulton Investment Company.

*Briggs & Morgan, Richard E. Kyle, Sr.,* and *Ronald E. Orchard,* for appellants Sterling Industries and Harold L. Rutchick.

*Wozniak & Finley* and *D. D. Wozniak,* for respondents.

Heard before Knutson, C. J., and Otis, Todd, and MacLaughlin, JJ.

OTIS, JUSTICE.

The issue on this appeal is whether in rezoning residential property to permit the construction of apartment buildings the city of St. Paul was justified in proceeding without obtaining the consent of affected property owners. The trial court held that the city had failed to make an adequate showing that it was impractical to obtain such consent, and we affirm.

The property affected by these proceedings consists of 63 lots on Youngman Avenue, located in the four blocks extending west from Rankin Street. This rezoning was initiated on September 4, 1968, when the St. Paul City Council directed the City Planning Board to survey 320 acres between Seventh Street, Elway Street, and Shepard Road. The actual area surveyed was 350 acres. The purpose of the survey was to determine—

"'* * * whether a change of the zoning classification of lands comprehended therein to commercial, industrial, or multiple dwelling uses is reasonably related to the over-all needs of the community, to existing land uses, and to a plan for future land use.'"

After the planning board conducted a public hearing, it reported to the city council on January 27, 1969, as follows:

"In summary: The City Planning Board * * * has surveyed the area requested by Council and found the obtaining of written consent impractical, and feels that a rezoning to 'C' residential in the area bounded by Shepard Road on the South, Rankin Street on the east, Stewart Avenue and a line one-half block north of Stewart Avenue on the north, and Davern Street on the west, a reasonable action to take."

Significantly, its finding that the obtaining of written consent was impractical referred only to its survey of the entire 350 acres. The planning board recommended that a 14-acre tract bounded by Shepard Road, Rankin Street, Stewart Avenue, and Davern Street be rezoned from "B" residential to "C" residential, which would permit the construction of apartment buildings.

On March 27, 1969, the council introduced an ordinance rezoning the 14-acre tract. Thereafter, on July 1, 1969, the council adopted Ordinance No. 14,210, which is the subject of this litigation. It rezoned a 7-acre tract from "B" residential to "C" residential and recited the following findings:

"* * * [S]aid Council upon public hearing thereon and upon consideration of said written report, findings and recommendations of said Board and being otherwise fully advised in the premises, by a two-thirds vote of all of its members in favor thereof determined, and does hereby determine that the number of descriptions of real estate affected by said amendment to said Zoning Code renders the obtaining of the written consent to such amendment on the part of the owners of two-thirds of the several descriptions of real estate situated within one hundred feet of the real estate to be affected impractical and that hereby said Zoning Code shall be amended so that said hereinabove described real estate shall be reclassified and rezoned thereunder, without such written consent, from 'B' Residence District to 'C' Residence District, pursuant to Section 64.06 of said Zoning Code and Section 462.357, Minnesota Statutes Annotated, as amended, and as aforesaid, said hereinabove described real estate hereby is accordingly reclassified and rezoned."

This action was brought against the city by property owners both within the affected area and within 100 feet of it, seeking a determination that the rezoning is invalid. Intervenors, who have taken this appeal, are Fulton Investment Company, Sterling Industries, Inc., and Harold L. Rutchick. They own property within the rezoned area and seek to sustain the validity of the

ordinance, apparently to make it possible for them to construct apartment buildings on their lots.

The trial court made extensive findings and also incorporated in its order a well-considered memorandum construing Minn. St. 462.357, subd. 5,[1] and St. Paul Legislative Code, § 64.06, which in part provide as follows:

Minn. St. 462.357, subd. 5. "The provisions of this subdivision apply to cities of the first class. In such cities amendments to a zoning ordinance shall be made in conformance with this section but only after there shall have been filed in the office of the city clerk a written consent of the owners of two-thirds of the several descriptions of real estate situate within 100 feet of the real estate affected, and after the affirmative vote in favor thereof by a majority of the members of the governing body of any such city. The governing body of such city may, by a two-thirds vote of its members, after hearing, adopt a new zoning ordinance without such written consent whenever the planning commission or planning board of such city shall have made a survey of the whole area of the city or of an area of not less than 40 acres, within which the new ordinance or the amendments or alterations of the existing ordinance would take effect when adopted, and shall have considered whether the number of descriptions of real estate affected by such changes and alterations renders the obtaining of such written consent impractical * * *."

St. Paul Legislative Code, § 64.06. "Provided, that the City Council by a two-thirds vote of all its members in favor thereof, may, after hearing, and after a determination that the number of descriptions of real estate affected by changes and alterations renders the obtaining of written consent impractical, amend or alter any existing provision of the Zoning Code or any plan without such written consent whenever the City Planning Board of

---

[1] Under L. 1971, c. 469, the city of St. Paul may elect not to be governed by Minn. St. 462.357, subd. 5, but that statute continues to apply to Minneapolis and Duluth.

Saint Paul shall have made a survey of the whole area of the City of Saint Paul or of an area of not less than forty (40) acres, within which the plan or the amendments or alterations of the existing Zoning Code or plan would take effect when adopted, and shall have considered whether the number of descriptions of real estate affected by such changes and alterations renders the obtaining of such written consent impractical * * *."

1. The trial court held that under the statute and the ordinance, the city council could dispense with the consent of two-thirds of the affected owners only when all of the minimum 40-acre area surveyed was thereafter rezoned. The court was of the opinion that any other construction would permit an evasion of the statutory purpose by allowing a 40-acre survey to be used as a device to spot zone or strip zone without the consent of the owners. However, because we are affirming on other grounds, we do not find it necessary to pass on this issue.

2. The city council's failure to "make a determination of the impracticability of securing the written consent of the owners" was held by the trial court to deprive the council of jurisdiction to enact the ordinance. In its memorandum, the court pointed out that there was no evidence the council discussed or considered the identity or number of affected owners. The court held that the council's recital that it was impractical to obtain consent did not constitute a "determination" within the meaning of § 64.06, St. Paul Legislative Code. The finding of the planning board, the court observed, had reference only to the 320-acre tract.

The intervenors argue that rezoning is an exercise of the council's police power; that requiring two-thirds of the adjoining landowners to consent is an exception to the inherent power of a municipality and may be limited by the legislature; that there was compliance with the statute and the city zoning code; and that the council's determination was conclusive on the court and is not subject to judicial scrutiny.

In defining the responsibility of the governing body of a municipality, the key words in Minn. St. 462.357, subd. 5, are "shall

have considered whether the number of descriptions * * * renders the obtaining of such written consent impractical." The St. Paul Legislative Code, § 64.06, imposes the more specific burden of making "a determination" that consent is impractical.

We do not agree that the court is bound by the city council's recitation of the facts where there is no evidence to support its conclusions. We construe the statute to require the council not only to "consider" the number of descriptions but to base its determination on persuasive probative evidence. The same may be said of its "determination" under the zoning code. We agree that a finding of impracticality must be based on the number of owners involved and not simply on the difficulty of securing consent from particular owners. In the case before us, the city was obliged to secure consent from only 30 different people. The area rezoned covered 7 acres, not the 350 acres which were originally studied. With the resources available to a municipality the size of St. Paul, it is inconceivable that the process of establishing title, identifying the owners, and negotiating with them for consent made that route an impractical one to follow.

The word "impractical" does not necessarily mean "impossible." Webster's Third New International Dictionary (1961) p. 1136, defines "impractical" as synonymous with "impracticable." "[I]ncapable of being put into use or effect or of being accomplished or done successfully or without extreme trouble, hardship, or expense." The city made no attempt to produce evidence that the number of owners rendered it incapable of successfully securing consent without extreme trouble, hardship, or expense.

Our conclusion that the trial court was justified in questioning the facts on which the council's decision was based is supported by decisions of this court and other courts in analogous situations. In Town of Burnsville v. City of Bloomington, 268 Minn. 84, 89, 128 N. W. 2d 97, 101 (1964), we held that the finding of an emergency by a city council was not conclusive on the court and the court was free to determine the facts and "declare inef-

fective an ordinance improperly adopted."[2] In Payne v. Kinder. 147 W. Va. 352, 375, 127 S. E. 2d 726, 740 (1962), the general rule was stated thus:

"It is well settled that a factual reality can not be changed or overcome by mere legislative fiat and that a legislative declaration which is clearly contrary to the actual facts will not be recognized or sanctioned in a judicial proceeding."

By the same token, it was held in Kress, Dunlap & Lane, Ltd. v. Downing, 286 F. 2d 212, 215 (3 Cir. 1960):

"That a legislative body cannot for all time insulate its determinations from judicial inquiry into the continued existence of the legislative facts upon which the constitutionality of the legislation is dependent is well settled. Block v. Hirsh, 1921, 256 U.S. 135, 41 S. Ct. 458, 65 L. Ed. 865; Marcus Brown Holding Co. v. Feldman, 1921, 256 U.S. 170, 41 S. Ct. 465, 65 L. Ed. 877; Edgar A. Levy Leasing Co. v. Siegel, 1922, 258 U.S. 242, 42 S. Ct. 289, 66 L. Ed. 595; Home Building & Loan Ass'n v. Blaisdell, 1934, 290 U.S. 398, 54 S. Ct. 231, 78 L. Ed. 413."

See, also, Leary v. United States, 395 U. S. 6, 38, 89 S. Ct. 1532, 1549, 23 L. ed. 2d 57, 83, note 68 (1969), where the United States Supreme Court noted:

"A statute based upon a legislative declaration of facts is subject to constitutional attack on the ground that the facts no longer exist; in ruling upon such a challenge a court must, of course, be free to re-examine the factual declaration."

Since there was no factual basis for the council's determination which dispensed with obtaining consent from two-thirds of the affected owners, we hold that the trial court was correct in finding the council lacked jurisdiction to rezone, and accordingly affirm.

Affirmed.

---

[2] Other "emergency" cases are annotated at 35 A. L. R. 2d 586.