## JOSEPH BECK AND OTHERS v. CITY OF ST. PAUL AND ANOTHER.

231 N. W. 2d 919.

July 3, 1975—Nos. 45442, 45465, 45466.

Stacker & Revich, R. J. Tansey, Jr., Robins, Davis & Lyons, and Solly Robins, for appellant corporation.

Pierre N. Regnier, City Attorney, for appellant city.

Firestone, Fink, Krawetz, Miley & Maas, James P. Miley, and William W. Fink, for respondents.

PETERSON, JUSTICE.

These appeals present questions of importance in the law of municipal zoning. The city of St. Paul adopted an ordinance amending its zoning plan. Certain affected citizens challenged the validity of the zoning amendment. The trial court, ruling the new zoning ordinance invalid, enjoined any development of the area in issue that was inconsistent with the former zoning classification.

The property affected by the challenged zoning amendment (hereinafter the "subject area") is an 8-block area on the southwest edge of the city of St. Paul. The subject area contains approximately 33 1/2 acres and is generally bounded by Benson Avenue on the north, Rankin Street on the east, Youngman Ave-

nue on the south, and Alton Street on the west. Until December 1973 the subject area was zoned "B Residential." A "B Residential" district permits the construction of single-family residences, double bungalows, and duplexes.

There are approximately 256 40- by 120-foot lots in the subject area, most of which are vacant. There are only 72 houses containing 79 residence units in the area. Some of the streets in the area are not improved, and there are serious sewer and water problems. Outside of the perimeter of the 8-block area there has been commercial development, industrial development, and apartment use; the predominant zoning classifications adjacent to the subject area are "C Residential," "Commercial," and "Industrial." The subject area is surrounded by well-traveled roads and streets.

The plaintiffs in this suit are all landowners within the subject area. The defendants are the city of St. Paul (hereinafter the city) and The Stuart Corporation, a Minnesota corporation owned by Stuart H. Nolan. The Stuart Corporation has acted, at all times herein, on behalf of and as an agent for Shepard Park, a partnership consisting of Nolan and three others. Shepard Park has proposed a 32 million dollar development within the subject area. At the time of trial, the partnership owned, or was obligated to purchase pursuant to executory contracts, more than 80 percent of the land within the subject area.

A rezoning amendment was formally proposed in August 1973. The proposed amendment rezoned the subject area from "B Residential" to "C Residential" and "Commercial" for the purpose of constructing multiple dwelling units, office buildings, and a recreational center.

The matter was submitted to the board of zoning, and public hearings on the proposal were held for 3 days. The minutes of these public hearings indicate that the views of both proponents and opponents of the rezoning were considered at great length.

On October 18, 1973, the board of zoning unanimously recommended to the planning commission that the proposed rezoning

be approved. The planning commission thereafter held public hearings concerning the proposed rezoning. Again, both proponents and opponents of the proposed rezoning were heard, and the planning commission minutes indicate that the commission took into consideration various reports. On November 8, 1973, the planning commission unanimously recommended to the city council that the proposed amendment to the zoning code be adopted.

Roger Ryan, acting head of the planning department of the city of St. Paul, testified that his department had made an "in depth study" of the proposed amendment to the zoning ordinance and, as a result of that study, the planning department favored approval of the amendment. Ryan testified that the factors taken into consideration in deciding upon the recommendation included the comprehensive city zoning plan developed in 1963, the existing land uses within the subject area, the land uses of the surrounding area, street capabilities in the area, the existence of commercial developments in the area adequate to service the proposed development, and the trend of land usage in the area.

On November 20, 1973, the city council held a public hearing to consider the proposed rezoning. Written notice of the council hearing was sent to all persons living within the subject area. Further, the city clerk had published notice of the public hearing in the *St. Paul Legal Ledger* on November 10, 1973. The council heard both proponents and opponents of the proposed rezoning, including a spokesman for plaintiffs.[1] After three readings, Ordinance No. 15521, rezoning the subject area, was adopted by the council on December 19, 1973.

Plaintiffs subsequently filed suit to have the rezoning amendment declared void, and the trial court found that the ordinance

---

[1] In connection with their presentation in support of the zoning amendment before the board of zoning, the planning commission, and the city council, The Stuart Corporation pledged to pay as a minimum amount the fair market value of the property in the area to any individual who wished to sell his property.

was invalid. Post-trial motions by the city and The Stuart Corporation were denied and each defendant appealed.

■ Plaintiffs contend that the initiation of the rezoning amendment was not carried out pursuant to law. As a result, it is argued, the council was without authority to enact the ordinance, and the ordinance is invalid.

The relevant facts are as follows: In June 1973 The Stuart Corporation made formal application for the zoning amendment. This petition was filed by The Stuart Corporation as a property owner affected by the proposed zoning. The Stuart Corporation soon recognized that there were procedural difficulties with its petition for rezoning. Specifically, the St. Paul Legislative Code allows for affected property owners to petition for a rezoning if they own 50 percent or more of the frontage on any street in the area to be rezoned.[2] On the date of petition, however, The Stuart Corporation owned no property within the subject area. As a result, The Stuart Corporation withdrew its request for a rezoning.

Minn. St. 462.357, subd. 4, provides, however, that "[a]n amendment to a zoning ordinance may be initiated by the governing body, the planning agency, or by petition of affected property owners as defined in the zoning ordinance." See, also, St. Paul Legislative Code, § 64.06.

On this basis, the city attorney advised the city council that the zoning amendment could be initiated by the city council itself. The council subsequently passed a resolution on August 23, 1973, intended to formally initiate the zoning amendment.[3]

---

[2] The Legislative Code of St. Paul, § 64.06, provides, in relevant part, that "[w]henever the owners of 50% or more of the frontage on any street in any district * * * shall present a petition * * * to the City Council * * * it shall be the duty of the Council to vote upon said petition * * *."

[3] The resolution provided, in relevant part, "3. That in order to consider on its merits the request for rezoning of the properties described above, the Saint Paul City Council hereby initiates an amendment to

On the basis of these facts, defendants claim that the rezoning was validly initiated by the city council. Plaintiffs, however, argue that the rezoning was initiated by The Stuart Corporation in fact, regardless of the subsequent formalities, and was invalid under the St. Paul Legislative Code. They contend that the only continuing thrust for rezoning came from The Stuart Corporation. Since there was nothing to indicate that the rezoning would have occurred if the corporate application had not been made, the trial court concluded that The Stuart Corporation had, in fact, initiated the rezoning.

We think that conclusion is unwarranted, for it is contrary to the expressed intent of both The Stuart Corporation and the city council itself. The Stuart Corporation specifically withdrew its petition; the city council subsequently passed a resolution to formally initiate the rezoning consideration. To allow a prior private petition to negate a subsequent official city resolution would be to circumvent the clear language and intent of the controlling statutes. Minn. St. 462.357, subd. 4, should logically be read to refer to a formal initiation process. Notwithstanding the previously expressed desires of The Stuart Corporation, the city council's action was clearly sufficient to accomplish the purpose of that statute.

■ Plaintiffs also assert that the St. Paul City Council lacked jurisdiction to enact the zoning amendment.[4] This objection is based on the claim that the requisite number of affected property owners had not filed their consents to the proposed rezoning before the city council acted on it.

---

the Saint Paul City Zoning Ordinance pursuant to Minnesota Statute 462.357, Subdivision 4, and, be it further RESOLVED,

\* \* \* \* \*

"5. That the Saint Paul City Council finds and determines that this resolution is for the sole purpose of initiating the procedures for amending the zoning code as requested by the Stuart Corporation and is in no manner a final approval of such an amendment request."

[4] Although the jurisdictional issue was only tangentially raised in the complaint, the argument was squarely presented at trial.

Minn. St. 462.357, subd. 5, requires that in a city of the first class, a zoning ordinance can be amended "only after there shall have been filed in the office of the city clerk a written consent of the owners of two-thirds of the several descriptions of real estate situate within 100 feet of the total contiguous descriptions of real estate" desired to be rezoned.

We do not question that under the language of Minn. St. 462.357 consents ordinarily are required even for council-initiated zoning amendments.[5] To make an exception to this statutory scheme for council-initiated amendments would allow circumvention that would vitiate the consent requirement altogether. If such an exception existed, a property owner unable to obtain the necessary consents could ask a simple majority of the city council to first initiate and then pass a rezoning ordinance. Two recent decisions of this court intimate an awareness of this possibility: O'Brien v. City of St. Paul, 285 Minn. 378, 173 N. W. 2d 462 (1969), and LaCourse v. City of St. Paul, 294 Minn. 338, 200 N. W. 2d 905 (1972).

The rezoning issue in LaCourse similarly involved an amendment initiated by the St. Paul City Council, and we there held that the council could not dispense with the jurisdictional requirement of obtaining consents from two-thirds of the affected owners by an unsupported finding that it would be impractical to obtain such consents. We held in O'Brien that the consent requirement does not unconstitutionally delegate legislative authority to private property owners.

The more important question, rather, is to determine which consents are actually required. The statute provides that the zoning amendment must be consented to by the owners of at least two-thirds of the lots within 100 feet of the area subject to re-

---

[5] The statute provides that the consents are not necessary if the rezoning will affect at least 40 acres, the city has made a survey of that area, and it has been found impractical to obtain the consents. No such contention was made in this case. See, LaCourse v. City of St. Paul, 294 Minn. 338, 200 N. W. 2d 905 (1972).

zoning. In Kiges v. City of St. Paul, 240 Minn. 522, 62 N. W. 2d 363 (1953), we construed an ordinance containing a similar consent provision as meaning that the 100-foot measurement runs from the boundary of the entire area to be rezoned, and not from any individual lot within the area.

Defendants, relying on Kiges, contend that the only consents necessary are those of property owners in the area between the outer perimeter of the base property and a line drawn 100 feet beyond the perimeter of the base property. Plaintiffs argue that a proper reading of the statute requires the appropriate number of consents among those property owners *and* the property owners *within* the area to be rezoned.

Where, as it is here, the language of a statute is ambiguous and two interpretations are possible, our role is to ascertain probable legislative intent and to give the statute a construction consistent with that intent. Minn. St. 645.16. We are persuaded that the reading urged upon us by plaintiffs better reflects the legislative policy underlying Minn. St. 462.357, subd. 5. To read the statute as not requiring the consent of the owners of property within the target area would mean that the views of those living in the 100-foot perimeter would have far greater effect upon the zoning decision than those of the inhabitants of the area for which rezoning is sought. Since the requirement of consent is plainly designed to protect the people most directly affected by a rezoning, we are convinced that the more inclusive reading more faithfully comports with all indications of legislative intent.

A superficial reading of Kiges v. City of St. Paul, 240 Minn. 522, 62 N. W. 2d 363 (1953), may have suggested a different construction, but this point was not there in issue. We held that the ordinance there construed required that consents be obtained from "two-thirds of the owners within 100 feet of the outer perimeter of the entire area of land affected * * *." 240 Minn. 533, 62 N. W. 2d 371. However, since the rezoning in Kiges had been petitioned for by a majority of the landowners in the target

area to be rezoned, there was no occasion to resolve the question now presented. Kiges should be read to have presupposed a proper petition by affected property owners.

We hold, then, that the area from which consents must be obtained under § 462.357, subd. 5, includes both the area to be rezoned and the area within a boundary 100 feet from the outer perimeter of the area to be rezoned.

It remains to apply these consent requirements to the instant facts. It is unquestioned that there were on file with the city clerk, prior to the time the city council enacted the zoning amendment, consent petitions from the owners of two-thirds of the lots in the strip surrounding the subject area. There is a subsisting question, however, concerning the existence at that time of valid consents from the requisite number of property owners within the subject area. The Stuart Corporation represents that it had obtained consents from property owners within the subject area as well, representations supported by an exhibit in evidence at the trial. The record affirmatively shows that before the ordinance was enacted, representations were made to the city council that owners of 69 percent of the lots within the subject area had also consented to the proposed rezoning.

We think it proper, however, that any subsisting questions of fact as to the number and validity of these consents be determined by the trial court. We accordingly remand this matter to the district court for that limited purpose. Subject to its finding that the requisite number of consents from the total area, including both the 100-foot strip and the subject area itself, existed at the time the city council enacted the zoning amendment, we hold that the procedural and jurisdictional requirements of the statute were satisfied.[6]

---

[6] Our concurring-dissenting colleague expresses the view that consent of property owners should not be required when the municipality itself initiates the proposed zoning, expressing concern that disagreeing citizens may otherwise defeat a step-by-step comprehensive rezoning of the entire municipality. The statute, as we have noted, is clear in re-

We are aware that these consents were never filed in the office of the city clerk, as required by Minn. St. 462.357, subd. 5. We conclude, however, that there was substantial compliance with the statute. It is undisputed that a timely attempt was made to file the consents, but that they were not filed because the St. Paul city attorney's office advised against such a filing. The city council, as stated above, was aware of their existence at the time the ordinance was passed. The consent requirement serves only to protect those most affected by a proposed rezoning; that purpose was in these circumstances served if the consents existed in fact, notwithstanding that they were not formally filed.

█ The trial court found that St. Paul Ordinance No. 15521 was invalid because it "has no substantial relation to the health, safety, morals or general welfare, and it is clearly arbitrary, capricious, discriminatory, and unreasonable." We think that the court, in making that finding, exceeded its limited scope of judicial review.

---

quiring the consent of property owners. The city of St. Paul, in LaCourse v. City of St. Paul, 294 Minn. 338, 200 N. W. 2d 905 (1972), seemingly assumed that consent ordinarily is required even for a council-initiated rezoning, for the issue raised in that case was simply whether the city could proceed without obtaining consents by reason of the exception contained in both Minn. St. 462.357, subd. 5, and St. Paul Legislative Code, § 64.06. This exception provides that in the case of a survey of the whole area of the city or of an area not less than 40 acres, the council, by two-thirds vote and upon its determination that "the number of descriptions of real estate affected by such changes and alterations renders the obtaining of such written consent impractical," may proceed without the otherwise-required consent of affected property owners. The exception was held inapplicable in LaCourse because the area to be rezoned covered just 7 acres, involving only 30 different people, "[t]he city [having] made no attempt to produce evidence that the number of owners rendered it incapable of successfully securing consents without extreme trouble, hardship, or expense." 294 Minn. 343, 200 N. W. 2d 909. Although we did not pass on the issue in LaCourse, we think that a large-scale, comprehensive rezoning program surely would present a classic case for application of the statutory exception.

The appropriate scope of review of zoning cases was recently stated in Sun Oil Co. v. Village of New Hope, 300 Minn. 326, 220 N. W. 2d 256 (1974). We there held that when a municipality adopts or amends a zoning ordinance, it acts in a legislative capacity under its delgated police powers. We said (300 Minn. 333, 220 N. W. 2d 261):

"When judicially reviewing a legislative determination, the scope of review must necessarily be narrow. The rationale behind the limited nature of review in such cases is aptly set out in State ex rel. Howard v. Village of Roseville, 244 Minn. 343, 347, 70 N. W. 2d 404, 407 (1955):

" 'Insofar as zoning ordinances are concerned, it has frequently been held that what best furthers public welfare is a matter primarily for determination of the legislative body concerned * * *.

" 'Even where the reasonableness of a zoning ordinance is debatable, or where there are conflicting opinions as to the desirability of the restrictions it imposes * * *, it is not the function of the courts to interfere with the legislative discretion on such issues.' "

See, also, Village of Euclid v. Ambler Realty Co. 272 U. S. 365, 47 S. Ct. 114, 71 L. ed. 303 (1926); 8 McQuillin, Municipal Corporations (3 ed.) §§ 25.55, 25.67; Merriam Park Community Council, Inc. v. McDonough, 297 Minn. 285, 210 N. W. 2d 416 (1973).

A municipality has a right to determine whether changing conditions or the public interest demands an exercise of the power to amend a zoning ordinance and to select the measures that are necessary for that purpose. Thus, the wisdom or good policy of a zoning ordinance is for a municipality to determine, and the court's scope of review must necessarily be narrow.

The ordinance here, as the city council implicitly found, bore a significant relation to the health and welfare of the city. The amendment would allow an area to be developed for additional

residential and commercial purposes and would increase the tax base of the city.

The trial court was particularly concerned by the possibility that the rezoning would lower plaintiffs' property values. The exact extent of the effect is unclear in the record, but it does not seem to be great. The simple fact that certain property values may decline is not of itself a sufficient reason to invalidate a proposed rezoning. Values are not, in and of themselves, the test of validity of a zoning regulation. They are factors for a city council to take into consideration in arriving at its conclusions on the total merits in the interest of the community. The general welfare of the public is paramount in importance to the pecuniary stake of the individual. Partain v. City of Brooklyn, 73 Ohio L. Abs. 481, 138 N. E. 2d 180 (1955); Gedney Estates, Inc. v. City of White Plains, 99 N. Y. S. 2d 111 (1950); 8 McQuillin, Municipal Corporations (3 ed.) §§ 25.44, 25.66.

The evidence does not support a finding that the council's action was arbitrary, capricious, or unreasonable. The rezoning was predicated upon a number of studies, surveys, hearings, and deliberations. Evidence was received, at various times, from traffic engineers; civil engineers; planning agency officials; experts with regard to fire safety, energy and power, environmental concerns, sewer and water problems, and parks and recreations; various city officials; local residents; and interested citizens. The general opinion of many who testified was that the rezoning was both in the short-term and long-term best interests of the city and its residents. Where the ultimate reasonableness of a zoning ordinance is debatable, it is not the function of the courts to interfere with discretionary legislative determination of such issues.

Reversed and remanded.

YETKA, JUSTICE (concurring in part and dissenting in part).

I concur in that portion of the opinion which holds that the rezoning by the city of St. Paul was proper in this case.

I dissent from that portion of the opinion that would remand the case to the trial court. I would not remand, but would hold that the city of St. Paul need not secure the consent of adjoining property owners when the municipal body itself initiates the proposed rezoning. Otherwise, disagreeing citizens might defeat an overall comprehensive plan to rezone a whole city by refusing to consent to the rezoning of their particular area. Should the city council decide that rezoning of the city area by area is the most practical and expedient way, it would be foreclosed from using that process if the population of one area opposed the change.