2600 UNIVERSITY INN, LLC, et al., Appellants,

v.

CITY OF MINNEAPOLIS, Respondent,

and

National Lodging Companies, Inc., defendant/intervenor, Respondent.

No. C5–96–1031.

Court of Appeals of Minnesota.

Nov. 19, 1996.

Review Granted Feb. 26, 1997.

Robert R. Barth, Sarah Crippen Madison, Best & Flanagan, Minneapolis, for Appellants.

Michael T. Norton, Acting City Attorney, Stuart R. Browne, Assistant City Attorney, Minneapolis, for Respondent City of Minneapolis.

Richard I. Diamond, Diamond, Liszt, & Grady, P.A., Minneapolis, for Respondent National Lodging Companies.

Considered and decided by DAVIES, P.J., and KLAPHAKE, and PETERSON, JJ.

## OPINION

PETERSON, Judge.

This appeal is from an amended summary judgment entered in favor of respondents in this action to amend the Minneapolis zoning ordinance. Two Minneapolis property owners argue that the district court erred in determining that (1) consent to a zoning amendment from one owner of a jointly-owned property constitutes consent to the amendment on behalf of all owners of the property and (2) consent from neighboring property owners to an amended rezoning petition is not required when the amended petition seeks a less-intensive use. We reverse.

## FACTS

Respondent National Lodging Companies, Inc., filed a petition to amend the zoning ordinance of respondent City of Minneapolis to change the zoning classification of a vacant parcel of land in Minneapolis from B1–2 to B3C–4. National intended to build on the land a luxury suite hotel with convention potential. National had signed a purchase agreement for the property, and the property's owner, McGraw–Edison Company, had authorized National to seek the zoning amendment on its behalf before execution of the final purchase agreement.

Under Minn.Stat. § 462.357, subd. 5 (1994), a zoning ordinance in a city of the first class cannot be amended until a written consent to the amendment from the owners of two-thirds of the property descriptions located within 100 feet of the property to be affected by the proposed amendment is filed with the city clerk. National had been provided a Hennepin County Property Information System Property Owners List that was certified by the Hennepin County Department of Property Taxation to contain the names of the owners of the seven descriptions of real estate located within 100 feet of the vacant parcel. The list identified the owners of the seven properties as McGraw–Edison; Gus Kempf, Jr.; W.J. Kuross & E.C. Kuross; W.J. & E.C. Kuross; Days Inns of America, Inc.; and Bruce Printing, Inc.[1] William and Edith Kuross owned one parcel as tenants in common and the other two as joint tenants.

1. One property owned by William Kuross and his wife, Edith, was later determined to be two descriptions of real estate for purposes of Minn. Stat. § 462.357, subd. 5.

National filed written consents to its petition for rezoning from McGraw–Edison; Bruce Printing; Gus Kempf, Jr.; and William J. Kuross, but not from Edith Kuross. The city determined that National had filed written consent from the owners of six of the seven properties located within 100 feet of the vacant parcel and, therefore, had satisfied the consent requirement in Minn.Stat. § 462.357, subd. 5.

During the rezoning proceedings, in response to concerns expressed by the city and neighborhood organizations, National agreed to amend its petition to seek a B3–2 classification for the vacant parcel, rather than the B3C–4 classification sought initially. The B3–2 classification would allow National to build a suite hotel with limited meeting room space and the ability to provide only continental breakfast service. National asked the city to advise it if a new application was required to proceed with the rezoning, and the city permitted National simply to amend its original petition for rezoning. The city did not require National to file written consent to the amended petition from neighboring property owners. The city passed an ordinance rezoning the vacant parcel from B1–2 to B3–2.

Appellants 2600 University Inn, LLC, and University Holdings, Inc., opposed National's rezoning petition throughout the proceedings. Appellants each own real property located 120 feet from the vacant parcel. Appellants sued the city. The parties allowed National to intervene, then brought cross-motions for summary judgment.

The district court granted summary judgment for respondents. The court noted that Minn.Stat. § 462.357, subd. 5, did not define "owners." The court found persuasive the city's longstanding interpretation of Minn. Stat. § 462.357, subd. 5, that the consent of any one owner of jointly-owned property constitutes consent of the owners. The court also held that National was not required to file written consent to the amended petition from the owners of two-thirds of the neighboring properties because the B3–2 classification sought in the amended petition allowed a less-intensive use than the B3C–4 classification sought in the original petition.

## ISSUES

1. Does Minn.Stat. § 462.357, subd. 5 (1994), require National to file written consent to the zoning amendment from all owners of jointly-owned property?

2. Does Minn.Stat. § 462.357, subd. 5 (1994), require National to file written consent to its amended rezoning petition?

## ANALYSIS

On appeal from a summary judgment, we must examine the record to determine whether any genuine issues of material fact exist and whether the district court erred in applying the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). Statutory interpretation is a question of law subject to de novo review. *Schumacher v. Ihrke,* 469 N.W.2d 329, 332 (Minn.App.1991). In a zoning case, we must independently examine the zoning agency's decision without according any deference to the district court's review of that decision. *St. Croix Dev., Inc. v. City of Apple Valley,* 446 N.W.2d 392, 397 (Minn. App.1989), *review denied* (Minn. Dec. 1, 1989).

Generally, because zoning is a legislative act, a rezoning ordinance must be upheld unless the new zoning classification is unsupported by any rational basis or amounts to a taking without compensation. *State, by Rochester Ass'n of Neighborhoods v. City of Rochester,* 268 N.W.2d 885, 888 (Minn.1978). But

> there is no such presumption of validity of an ordinance as against the objection that no power existed under charter or statute to enact it.

6 Eugene McQuillin, *The Law of Municipal Corporations,* § 22.31, at 462 (3d ed.1988).

The consent provision in Minn.Stat. § 462.357, subd. 5 (1994), at issue here is jurisdictional. *See Beck v. City of St. Paul,* 304 Minn. 438, 444–47, 231 N.W.2d 919, 923–24 (1975) (jurisdictional requirements of Minn.Stat. § 462.357, subd. 5, met if record shows requisite number of consents existed when zoning ordinance was amended); *LaC-*

*ourse v. City of St. Paul*, 294 Minn. 338, 344, 200 N.W.2d 905, 909 (1972) (when there was no factual basis for city's determination that dispensed with need to obtain consent from owners of two-thirds of affected property, city lacked jurisdiction to rezone). Accordingly, the deferential standard of review generally accorded to a city's zoning ordinances does not apply in this case. *See Beck*, 304 Minn. at 444–49, 231 N.W.2d at 922–25 (supreme court first determined whether jurisdictional requirements of Minn.Stat. § 462.357 were met, then discussed deferential standard of review generally applied to ordinances and applied this standard to determine whether zoning amendment was valid).

1. The object of statutory interpretation is to determine and give effect to the intent of the legislature. Minn.Stat. § 645.16 (1994). When statutory language is clear and unambiguous, we must give effect to its plain meaning. *Green Giant Co. v. Commissioner of Revenue*, 534 N.W.2d 710, 712 (Minn.1995). If a statute is ambiguous, however, we must determine the legislature's intent by examining the need for the law, the circumstances of its enactment, the purpose of the statute, the prior law, the consequences of an interpretation, and the legislative history and administrative interpretations of the law. Minn.Stat. § 645.16.

Minn.Stat. § 462.357, subd. 5, provides that in cities of the first class,

> amendments to a zoning ordinance shall be made in conformance with this section but only after there shall have been filed in the office of the city clerk a written consent of the owners of two-thirds of the several descriptions of real estate situate within 100 feet of the total contiguous descriptions of real estate held by the same owner or any party purchasing any such contiguous property within one year preceding the request.

Neither Minn.Stat. § 462.357 (1994) nor Minn.Stat. § 462.352 (1994), which defines terms for the purposes of sections 462.351 to 462.364, define "owners."

■ Appellants argue that when a described real estate parcel has multiple owners, Minn.Stat. § 462.357, subd. 5, must be interpreted to require that all owners of the parcel consent to a proposed zoning amendment to constitute consent from that parcel of property. We agree. The consent requirement in Minn.Stat. § 462.357, subd. 5, is "designed to protect the people most directly affected by a rezoning," those who own property within the area to be rezoned and within 100 feet of the perimeter of the area to be rezoned. *Beck*, 304 Minn. at 445, 231 N.W.2d at 923. Unless Minn.Stat. § 462.357, subd. 5, is interpreted to require consent to the amendment from all owners of a jointly-owned property, the consent requirement in the statute protects the interests of only some of the people most directly affected by a rezoning.

■ It is well-settled that one co-owner of a property cannot act to bind the other co-owners or to impair or affect their rights. *See Krost v. Moyer*, 166 Minn. 153, 157, 207 N.W. 311, 312–13 (1926) (one cotenant cannot act to impair or affect rights of other cotenants); 3 Arden H. Rathkopf & Daren A. Rathkopf, *Rathkopf's The Law of Zoning & Planning*, § 29.02[2][b][iv][B] (4th ed. Mar. 1996) (well-established that joint tenant has duty to protect common title); Roger A. Cunningham et al., *The Law of Property* § 5.4, at 208 (1984) (joint tenant who purports to lease entire joint tenancy to third party cannot bind other joint tenants to lease). If consent to a zoning amendment from one co-owner were sufficient to constitute consent from the property for purposes of Minn.Stat. § 462.357, subd. 5, the act of one co-owner would bind the other co-owners and would affect, and possibly impair, their rights. Accordingly, Minn.Stat. § 462.357, subd. 5, must be interpreted to require consent to a zoning amendment from all owners of a jointly-owned property to constitute consent from that property. *Cf. Hamblett v. City of Nashua*, 102 N.H. 318, 156 A.2d 134, 135–36 (1959) (because one co-owner cannot bind another, assent of one co-owner to variance cannot constitute consent for property); 3 Rathkopf, *supra*, § 29.02[2][a][b][iv][B] (in states where written protest to zoning amendment from neighboring property owner imposes additional procedural requirements on city, allowing protest from one co-

owner of property to constitute protest from entire property is consistent with joint tenant's duty to protect common title).

Respondents argue that requiring all owners of a property to consent to a zoning amendment conflicts with an Attorney General's Opinion determining that "only one consent vote attaches to each description" for purposes of Minn.Stat. § 462.357, subd. 5. Op. Att'y Gen. 59a–32, n.* * (Dec. 18, 1973); *see Northern States Power Co. v. Williams,* 343 N.W.2d 627, 632 (Minn.1984) (Attorney General's opinion "is entitled to great weight"). In the opinion, however, the Attorney General did not determine, or even discuss, who has authority to cast the single consent vote that attaches to each description. *See* Op. Att'y Gen. 59a–32. Thus, our determination that all owners of a jointly-owned property must consent to a rezoning amendment to constitute consent from that property does not conflict with the Attorney General's opinion.

■ The city argues that interpreting Minn.Stat. § 462.357, subd. 5, to require all owners of a jointly-owned property to consent to a zoning amendment would require it to conduct expensive title searches to ensure consent has been obtained from all owners of a property. But here, Edith Kuross was named as a property owner on the certified list of property owners provided to National, and determining that Edith Kuross was an owner of three of the descriptions within 100 feet of the vacant parcel would not have imposed any additional administrative hardship on the city. In any event, administrative convenience does not outweigh a property owner's rights under Minn.Stat. § 462.357, subd. 5, and any remedy for overly burdensome statutory requirements lies with the legislature. *Cf. Glen Paul Court Neighborhood Ass'n v. Paster,* 437 N.W.2d 52, 56 (Minn.1989) (administrative convenience did not outweigh property owners' statutory right to individual notice of zoning amendment; if individual notice requirement became too burdensome for city, its remedy rested with legislature).

■ Because National did not file written consent to its petition from Edith Kuross, it did not file written consent from the three properties she owned jointly with her husband. Consequently, National filed written consent to the amendment from only three of the seven neighboring properties and did not meet the consent requirement of Minn.Stat. § 462.357, subd. 5. The city, therefore, had no jurisdiction to amend its zoning ordinance, and the ordinance rezoning the vacant parcel is void.

■ 2. Appellants next argue that Minn.Stat. § 462.357, subd. 5, required National to file written consent to its amended rezoning petition from the owners of two-thirds of the neighboring properties. We agree that in this case, Minn.Stat. § 462.357, subd. 5, required National to file written consent to the amended petition from neighboring property owners.

■ Under the B3C–4 classification National originally sought, National could build a luxury suite hotel with convention facilities. Under the B3–2 classification sought in the amended petition, National could build a suite hotel with limited meeting room space and the ability to provide only continental breakfast service. It cannot be assumed that a neighboring property owner who consented to rezoning a parcel to one zoning classification also consented to rezoning the parcel to all lesser-included classifications. It is possible that a neighboring property owner who consented to a luxury hotel with convention potential did so because the property owner anticipated that the convention facility would create opportunities for using the nearby properties. Thus, although the B3–2 classification allows a less-intensive use of the property than the B3C–4 classification originally sought, the amendment to the petition can be viewed as a change in the character of the rezoning, not as a de minimis change.

■ Consequently, although we do not decide whether consent from neighboring property owners is necessary for a de minimis change in a rezoning petition, we hold that when an amendment to a rezoning petition involves more than a de minimis change, Minn.Stat. § 462.357, subd. 5, requires the petitioner to file written consent to the amended petition from the owners of two-

thirds of the descriptions of real estate within 100 feet of the affected property.

## DECISION

Minn.Stat. § 462.357, subd. 5, required National to file written consent to the zoning amendment from all owners of a jointly-owned property to constitute consent from that property. Because National did not file consent to the zoning ordinance amendment from all owners of the jointly-owned properties that it relied on for consent, it filed consent from only three of the seven neighboring descriptions of real estate and did not meet the consent requirement of Minn.Stat. § 462.357, subd. 5. The city, therefore, had no jurisdiction to amend its zoning ordinance, and the ordinance rezoning the vacant parcel is void. The amendment to National's rezoning petition did not make a de minimis change. Minn.Stat. § 462.357, subd. 5, required National to file written consent to the amended petition from the owners of two-thirds of the descriptions of real estate within 100 feet of the vacant parcel.

**Reversed.**

DAVIES, Judge (dissenting).

I respectfully dissent.

We are—based on a truly strange record—undoing a rezoning decision of the Minneapolis City Council after all procedural steps in that rezoning have been completed. This should be done reluctantly.

In my view, the court is changing the law of agency. Across our state, thousands of land parcels are held with one or more passive owners and one active owner. The active owner makes all decisions relating to the management of the property as presumptive agent of the passive owner. Without evidence to the contrary, that presumption should prevail here and the consent of the active owner, William J. Kuross, should be treated as sufficient.

Literally read, Minn.Stat. § 462.357, subd. 5 (1994), requires the consent of owners within 100 feet to *initiate* the rezoning proceeding. That purpose was entirely served in this instance. In my view, the court has added a procedural complication inappropri-ate to an efficient rezoning process. I would read the statute and the Minneapolis ordinance as requiring the consent at the initiation of the process, and that that consent, once presumptively obtained, is not subject to withdrawal. The statute requires nothing more.

The case can also be appropriately viewed from a procedural perspective. That is, who has the burden of presenting evidence that negates a presumptively lawful consent once it has been given. In this case, appellants failed to put into the record an affidavit asserting that Edith C. Kuross objected to the rezoning—initially or later. And neither she nor her co-owner is a party to the action.

I note finally that this has been a strangely litigated case that, in my view, should not be viewed as precedent for destabilizing other rezoning decisions.