Vernon M. **MATTSEN** and Blanche M. Mattsen, husband and wife, Appellants,

v.

Colleen **PACKMAN**, Respondent.

No. C1–83–300.

Supreme Court of Minnesota.

Nov. 16, 1984.

---

W. Scott Herzog, Peter J. Timmons, Minneapolis, for appellants.

Craig H. Anderson, Susan D. Thurmer, Minneapolis, for respondent.

COYNE, Justice.

On February 14, 1975, Vernon Mattsen's automobile was rear ended by an automobile driven by Colleen Packman. Claiming that his automobile had been damaged in the collision, Mattsen sued Packman in Hennepin County Conciliation Court and secured a judgment in the amount of $500.00, the then jurisdictional limit of the conciliation court, plus $2.00 costs. Subsequently, Mattsen commenced an action in Hennepin County District Court to recover damages for personal injuries and property damage sustained in the accident with the Packman vehicle. Ruling that, under the doctrine of res judicata, the conciliation court judgment extinguished the claim, the district court granted summary judgment for the defendant. We affirm.

For more than 100 years Minnesota has consistently applied the principle of res judicata first enunciated in *Thompson v. Myrick*, 24 Minn. 4 (1877): a valid and final judgment extinguishes the claim and precludes any subsequent action on that claim. Indeed, the statement of the principle has remained unchanged since before the turn of the century:

> A judgment on the merits constitutes an absolute bar to a second suit for the same cause of action, and is conclusive between parties and privies, not only as to every other matter which was actually litigated, but also as to every matter which might have been litigated therein.

*Hauser v. Mealey*, 263 N.W.2d 803, 807 (Minn.1978) quoting *The Youngstown Mines Corp. v. Prout*, 266 Minn. 450, 466, 124 N.W.2d 328, 340 (1963); *Veline v. Dahlquist*, 64 Minn. 119, 121, 66 N.W. 141, 142 (1896). Here the collision was single and, despite the different kinds of damage which the plaintiff sustained, so also was his claim. Hence, the conciliation court judgment in favor of the plaintiff extinguished his entire claim for damages arising out of the collision and precludes a

subsequent action for damages by reason of personal injury.

While the plaintiff concedes the general applicability of the foregoing rule to a judgment for only part of the damages sustained, he urges us to carve out an exception for conciliation court judgments. Citing the jurisdictional limitations and informality of the conciliation court and lack of legal counsel in conciliation court proceedings, the plaintiff asks us to disregard the merger of his claim into the conciliation court judgment and to limit the effect of the judgment to the matters disposed of by that judgment.

The informality and the absence of counsel, however, militate against the plaintiff's position. An action is commenced in conciliation court by the filing of a verified claim, usually on a printed form. Although the Hennepin County Conciliation Court is a court of record—that is, a separate court with its own seal—proceedings before conciliation courts are not recorded. Hence, we really do not know *what* was litigated. We can infer from the fact that a judgment has been entered that there has been a hearing at which one or more of the parties, probably appearing pro se, has each presented his or her version of the facts. We do not know, however, whether or not the proceedings stayed within the confines of the verified claim. Certainly, it is not uncommon in the more formal atmosphere of the district court to litigate unpleaded items of damages. Should parties unrepresented by counsel be expected to hew exactly to the language of a printed form? Even if we assume that the parties confined their presentation to the particular items of damage described in the claim, do the "matters disposed of" include all property damage or only damage to the particular property described in the claim? Or is the "matter disposed of" limited to that portion of the claimed property damage which falls within the jurisdictional dollar limit of the conciliation court?

Moreover, even though we cannot know exactly to what extent damages were litigated in a conciliation court proceeding, we do know that the award of judgment to a plaintiff in a case such as this necessarily implies a determination that the defendant was negligent. Should that determination be conclusive in the second action on the same claim so that only the questions of the plaintiff's negligence and of the apportionment of the negligence remain unresolved?

■ In essence, the plaintiff would have us split a single, indivisible claim or cause of action into two separate and distinct claims if some portion of the claim can be split off for assertion in conciliation court. Such a rule would accord each party involved in an automobile accident the right to bring two separate lawsuits: an action in conciliation court for property damage or some part of his property damage and another action in district court for personal injury. Indeed, the plaintiff's proposition does not offer any basis for limiting the principle to automobile accidents or even to claims based on personal injury. In light of the growing concern of the bench, the bar, and the public over court congestion and delay and the cost of litigation, we decline to encourage the multiplicity of actions by declaring that each claimant is entitled to not one but two days in court.

This is not to say that a party who is excusably ignorant of the effect of a judgment should have no remedy. Relief may be had for cause; the judgment may be re-opened through proceedings to vacate pursuant to Rule 60.02, Minn.R.Civ.P., or, when appropriate, by an independent action to set aside the judgment. Certainly, in any given case, requiring vacation of the prior judgment does not lessen the burden on the judicial system. But until now few litigants have imperiled their claims for damages on account of personal injury by commencing an action in conciliation court to recover part of their property damage. If, however, this court were to rule that a claimant is *entitled* to split his claim and to bring an action in conciliation court for a part of his damages, there would undoubtedly be a significant increase in the caseload of conciliation courts.

Furthermore, the record in the present case does not suggest any compelling reason to forsake the existing doctrine of res judicata. The record reveals that although plaintiff avers that he did not seek his attorney's advice about instituting the action in conciliation court, he had engaged, or at least consulted, his attorney some months before commencing that action. During the course of negotiations with respect to the damage to his automobile, the plaintiff wrote a letter to the defendant's insurer expressing his dissatisfaction with the offer of settlement and stating that he was sending a copy of the letter to his named attorney "for further action." The plaintiff later represented to the insurer that he had consulted his attorney about the amount he should recover on the car.

■ Notice of the conciliation court judgment is dated February 19, 1976. About nine months later, in November of 1976, the plaintiff commenced the present action in district court. The answer alleged as an affirmative defense the conciliation court judgment and payment of that judgment on February 26, 1976. Although the answer rather inartfully characterizes the defense as an accord and satisfaction, there can be no doubt that the answer afforded notice of the defendant's intention to assert the prior judgment as a defense. Although that notice was served within one year after entry of the conciliation court judgment, there is no indication in the record that the plaintiff has ever sought vacation of the judgment.

■ Nor does the plaintiff contend that he was unaware that his claim for personal injury met the threshold requirements of the no-fault act when he instituted the conciliation court action. He had consulted a lawyer within five months after the accident; one year had elapsed between the accident and the conciliation court proceeding; and although he makes the general observation in his argument that the no-fault threshold requirements are not usually satisfied on the date of the accident, he does not assert that his personal injury claim was immature or that he did not intend to pursue it at the time he commenced the conciliation court action. Although the failure of a personal injury claim to exceed the no-fault threshold, Minn.Stat. § 65B.51 (1982), until sometime subsequent to entry of a conciliation court judgment might justify relief from operation of the judgment pursuant to Rule 60.02(6), Minn.R.Civ.P., immaturity of the claim does not justify ignoring the finality of the judgment whether the prior action be brought in conciliation court or elsewhere.

The judgment is affirmed.

TODD, Justice (dissenting).

I must dissent. At a time when the judicial system is being exhorted to provide simpler forms of dispute resolution, it seems most inappropriate to exalt form over substance as the majority has done by applying the doctrine of merger to conciliation court judgments. The failure of the majority opinion to meaningfully distinguish between the concepts included in the doctrine of res judicata can only lessen public confidence in Minnesota's conciliation court system.

The terms, "res judicata," "collateral estoppel," "merger," and "bar" are frequently confused. As Professor Martin explains:

> Sometimes the entire question is labeled the problem of *res judicata*, but usually that term is reserved to describing the effect of a judgment itself on a subsequent case raising the same cause of action, while *collateral estoppel* refers to the effects of findings of fact actually contested in one lawsuit upon a subsequent piece of litigation which may involve a different cause of action but some of the same facts. * * *
>
> Res judicata, as narrowly defined, may further be broken down into two categories: *bar*, and *merger*. "Bar" refers to the effect of the original judgment in preventing relitigation of the cause of action that was actually litigated. "Merger," on the other hand, refers to the effect of the original judgment in preventing litigation of matters that are considered so closely related to what was

actually litigated that they should have been litigated all at once. The entire dispute, in other words, is said to have merged in the original judgment whether or not all parts of the dispute were actually litigated. To the extent that it is justified, bar is based on the idea that there is usually no good reason to litigate a matter twice, and that the chance that a second piece of litigation is likely to produce a better result is outweighed by the costs of relitigation. Merger, on the other hand, cannot be justified by a desire to avoid *re*litigation of matters, since it deals with matters that should have been but were not litigated originally. Instead it finds its justification in the concept of waiver and in a desire to protect the courts and the parties from needless fractionalization of disputes— from having to become involved in two lawsuits where one would do.

J. Martin, *Conflicts of Law Cases and Materials* 609 (1978).

In applying the doctrine of merger to conciliation court judgments, the majority inadequately considers the informality of those proceedings. While the conciliation court system is designed to permit the public to resolve small claim disputes without legal advice, today's decision creates a trap for the unwary.

Mattsen argues that he did not know about the technical rules of merger and reasonably believed that damage to his automobile was distinct from a personal injury claim. He thought the conciliation court system offered him a means for resolving his property damage claim promptly and inexpensively. At no point did the conciliation court clerk or judge advise him to seek professional counsel. Mattsen argues that, given the expressed purposes of the conciliation court system, it would be unfair to tell him now that he really did need an attorney all along. I agree.

The majority suggests that the record in the present case does not present a compelling reason to forsake the existing doctrine of res judicata. Apparently they believe that Mattsen may have understood the consequences of bringing his action in conciliation court. This decision, however, affects all conciliation court plaintiffs, and few of them can be expected to understand the doctrine of merger and its preclusionary effect.

This decision also presents those who have suffered minor property damage in a car accident with a difficult choice. Should they, like Mattsen, sue in conciliation court to recover their property damage? Or, must they forego the remedy which our Legislature sought to provide in order to see whether they have suffered personal injuries which, like Mattsen's, were not immediately apparent? The choice is difficult because many individuals do not have the financial ability to absorb even small property losses.

The majority suggests that those who are disadvantaged by its decision can seek to have their conciliation court judgments vacated. This relief is inadequate for two reasons. First, vacating court orders burdens the individual with an additional expense. Secondly, while I would hope such vacations will be liberally granted, we have no assurance that they will be. The majority's decision ignores these consequences and sacrifices the informality of the conciliation court system upon the altar of res judicata.

Since the conciliation court system is designed to permit resolution of small claims without legal advice, I believe that while a conciliation court judgment may act as a bar to further litigation of matters disposed of by the judgment, there is no sound reason that the doctrine of merger should apply. The informality and lack of legal counsel in themselves are sufficient reasons to refuse to apply the merger portion of the doctrine of res judicata.[1]

---

**1.** The doctrine of collateral estoppel should not be applied to conciliation court matters for two reasons. First, parties to a conciliation court proceeding, because of its informality, do not have a full and fair opportunity to litigate a matter. It would be unfair to later bind a litigant to factfinding made in a cursory fashion in conciliation court. Second, no record is

Unlike the majority, I believe we should encourage the informality of conciliation court proceedings and not burden that court with rules and traditions which are applicable to courts more formally convened. The requirements of the majority opinion place form over substance. I would reverse the trial court's decision.

made of the proceedings. Thus, there is no reliable way of determining what evidence was

actually submitted to the judge for consideration.