In the Matter of the Arbitration
Between Robin CHARBONEAU,
Respondent,

v.

AMERICAN FAMILY INSURANCE
COMPANY, Petitioner,
Appellant.

No. C9–90–2525.

Supreme Court of Minnesota.

Feb. 7, 1992.

J.D. Haas, Eden Prairie, for appellant.

Mary C. Cade, Mark H. Gruesner, Schwebel, Goetz & Sieben, Minneapolis, for respondent.

SIMONETT, Justice.

This case discusses the questions of split claims and continuing jurisdiction for mandatory no-fault arbitration. We conclude that no-fault claims cannot be split and that the arbitrator's jurisdiction, once properly invoked, continues to cover medical expenses or wage loss incurred after the petition to arbitrate has been filed. This case should be read together with *Brown v. Allstate Ins. Co.*, 481 N.W.2d 17, also decided today.

Robin Charboneau was injured in an auto accident on December 22, 1985. Her no-fault carrier, American Family Insurance Company, paid benefits for awhile but then, after an independent medical examination, terminated benefit payments. In October 1987, about 2 years after her accident, Charboneau filed two petitions for arbitration. In the first petition, she claimed medical expenses of $548; in the second, she claimed a wage loss of $5,000.

At the time of her accident Charboneau was a licensed day-care provider, and after the accident she retrained to sell real estate. At the time she filed her petitions to arbitrate, her wage loss was actually $5,355. Charboneau's petition did not come on for an arbitration hearing for about a year, at which time her alleged wage loss totalled $25,007.69. Because she had two vehicles with stacked coverage, claimant had $40,000/40,000 no-fault coverage.

The arbitrator awarded Charboneau her medical expenses but said he lacked jurisdiction over the wage loss claim. The district court ruled that claimant could waive a portion of her wage loss to meet the jurisdictional limit; but, applying Rule 7, Minnesota No–Fault Comprehensive or Collision Damage Automobile Insurance Arbitration Rules, as it existed prior to April 1988, it concluded that claimant was not entitled to arbitrate the wage loss in excess of $5,000 that accrued between the time of filing the petition and the arbitration hearing. The arbitrator then awarded Charboneau $5,000 plus statutory interest on her wage loss claim.

On appeal, the court of appeals reversed, ruling that the arbitrator did have continuing jurisdiction for wage loss in excess of $5,000 incurred after the petition for arbitration was filed. The court of appeals observed there might be issues of constitutionality, but did not discuss them because they had not been raised. *Charboneau v. American Family Ins. Co.*, 467 N.W.2d 830, 833 n. 2 (Minn.App.1991). We granted American Family's petition for further review.

The issue of whether a claimant might waive a portion of her claim at the time of filing her petition in order to come within the jurisdictional amount was not disputed and, therefore, was not an issue in this

case. In *Brown v. Allstate Ins. Co.*, 481 N.W.2d 17, also decided today, we hold that a portion of a claim may be waived. This appeal presents two other issues: (1) May a claimant split her medical expenses and wage loss to meet the statutory jurisdictional limit? and (2) Does the arbitrator have continuing jurisdiction to decide medical expenses and wage loss accruing after the petition to arbitrate is filed?

## I.

 Although American Family does not expressly contest splitting a no-fault claim, the issue is intertwined with the continuing jurisdiction problem. It appears from the record the practice of splitting claims is becoming somewhat common and that district court decisions are divided on the question. Consequently, we believe we should resolve the issue here.

In this case, for example, if Charboneau could not split her medical expenses and wage loss, she would have had to waive not just $355 of her wage loss, but an additional $548 in order to bring her total claim within the $5,000 jurisdictional limit. By splitting her claim, Charboneau had to waive only $355 of wage loss. Her two arbitration petitions were then consolidated and given to the same arbitrator.

Minn.Stat. § 65B.525, subd. 1, as amended in 1987, provides for mandatory arbitration "where the claim at the commencement of arbitration is in an amount of $5,000 or less * * * for no-fault benefits or comprehensive or collision damage coverage." In 1991 the jurisdictional limit was raised to $10,000. 1991 Minn.Laws c. 321 § 1. The statute is silent on whether a claim for no-fault benefits can be split.

This court has long followed the general rule that a party to court litigation may not split a cause of action. *Hauser v. Mealey*, 263 N.W.2d 803, 807 (Minn.1978). This rule applies equally to bringing two lawsuits with slightly different theories of recovery (*e.g.*, negligence and breach of warranty) and to alleging different damages. *Myhra v. Park*, 193 Minn. 290, 258 N.W. 515 (1935). Similarly, a plaintiff may not bring a claim for property damage in conciliation

court and then pursue a claim for personal injuries in district court. *Mattsen v. Packman*, 358 N.W.2d 48, 50 (Minn.1984).

The rule against splitting a cause of action is intended to avoid a multiplicity of lawsuits and wasteful litigation. *Mattsen*, 358 N.W.2d at 50; *Myhra*, 193 Minn. at 294, 258 N.W. at 518. The rule is a judge-made rule. Consequently, some district courts have reasoned that when the legislature enacted the No–Fault Automobile Insurance Act it impliedly carved out an exception to the general rule against splitting causes of action.

The practice of splitting claims is troublesome here. One of the purposes of the No–Fault Act was "to create a system of small claims arbitration to decrease the expense of and to simplify litigation * * *." Minn.Stat. § 65B.42, subd. 4 (1988). By splitting no-fault damages, claimants are manipulating the system beyond what seems fair. Without splitting, a claimant who prefers arbitration to a district court action must file a petition to arbitrate before medical expenses and wage loss exceed $5,000 (now $10,000), or otherwise waive that portion of the no-fault claim over the jurisdictional limit at the time the petition is filed. If a claim can be split, the decision on whether and how much to waive can be postponed until the damages are much higher, perhaps as much as twice the statutory jurisdictional limit.

Moreover, separating the claim into two parts is artificial because the two arbitrations, as in this case, usually are consolidated and heard by the same arbitrator. In short, splitting a no-fault claim depreciates the legislature's decision to set a jurisdictional limit.

We hold, therefore, that a no-fault claim may not be divided. Nor do we think denying separation of a no-fault claim should be unduly disadvantageous for claimants because, as we shall see in Part II, *infra*, there is continuing jurisdiction for no-fault losses incurred after the petition is filed to the time of the hearing. It should be noted, however, that the statute speaks of a jurisdictional limit "for no-fault benefits or comprehensive or collision damage cover-

age." Minn.Stat. § 65B.525, subd. 1 (1988). This use of the disjunctive, we think, indicates that separate arbitration petitions can be filed for a comprehensive damages claim and for a collision damage claim.

Because American Family did not expressly raise the issue of splitting claims, it has waived that issue as to the Charboneau petitions.

## II.

■ The court of appeals, disagreeing with the trial court, ruled that the arbitrator had continuing jurisdiction to consider Charboneau's no-fault losses incurred after the petition for arbitration was filed until the hearing date. We agree with the court of appeals.

Charboneau's petitions were filed on October 17, 1987. At that time, section 65B.525, subd. 1, had been amended by the 1987 legislature to read: "The supreme court * * * shall by rules of court * * * provide for the mandatory submission to arbitration of all cases at issue where the claim at the commencement of arbitration is in an amount of $5,000 or less * * *." 1987 Minn.Laws c. 337 § 108 (effective Aug. 1, 1987).

American Family contends that the legislature, by amending section 65B.525, subd. 1, to confer arbitral jurisdiction for petitions not exceeding the jurisdictional amount "at the commencement of arbitration," did not intend thereby to confer continuing jurisdiction on the arbitrator. The insurance company stresses that the legislative intent in establishing mandatory arbitration was to create a system of arbitration for the speedy, inexpensive resolution of "small claims." Minn.Stat. § 65B.42, subd. 4. To introduce the concept of continuing jurisdiction, argues American Family, "forces insurers to arbitrate large claims in hostile forums."

As originally enacted, the Minnesota No-Fault Act contained no provisions for arbitration. Minn.Stat. § 65B *et seq.* (1971). In 1975, the legislature added an arbitration clause allowing for purely voluntary arbitration. 1975 Minn.Laws c. 160 § 2 (codified at Minn.Stat. § 65B.525, subd. 1 (Supp.1975)). In 1985, the arbitration provision was amended to make arbitration mandatory for "a claim in an amount of $5,000 or less." 1985 Minn.Laws c. 168 § 13. Committee discussions indicate this amendment was a response to complaints that insurers were refusing to arbitrate small medical bills of $200 to $500. *See* Legislative Tape, Hearing before Senate Economic Development and Commerce Committee, April 16, 1985.

In 1987 the legislature considered the problem of an arbitrator losing jurisdiction of amounts over the $5,000 limits, and, in conference committee, it was agreed to include the phrase "at the commencement of arbitration" to meet the problem of lost jurisdiction. *See* Legislative Tape, Insurance Conference Committee, May 16, 1987. Apparently, however, the committee did not envision an arbitrator having jurisdiction of large amounts over the jurisdictional limit. *Id.* Finally, in 1991, the legislature increased the jurisdictional limit to $10,000. 1991 Minn.Laws c. 321 § 1.

From this review of the legislative history, two points emerge. First, the 1987 amendment was intended to confer continuing jurisdiction on the arbitrator; and, second, what the legislature had in mind as a "small claim" was not entirely clear.

In any event, we read the 1987 amendment to provide for continuing arbitral jurisdiction, *i.e.*, the arbitrator retains jurisdiction over claims where the jurisdictional amount is exceeded by further expenses or losses accruing after the petition is filed. The statute requires only that the jurisdictional amount not be exceeded at the time the arbitration petition is filed. This is what we think the statute plainly says, and the legislative history supports this reading.

■ The statute says the supreme court shall adopt rules governing the arbitration process. In this case there was a time lag between when section 65B.525, subd. 1 was amended and when this court amended its No-Fault Arbitration Rule 7 to conform to the statutory change. The Charboneau petitions were filed during the time lag. At

the time the petitions were filed in October 1987, Rule 7 had not yet been changed to recognize continuing arbitral jurisdiction; instead the rule provided that if, after a petition had been filed, the claim accrued to more than $5,000 by the time of the arbitration hearing, then in such case the arbitrator could not decide that portion of the claim exceeding $5,000 absent a stipulation of the parties. Not until April 1, 1988, was Rule 7 effectively amended to recite that mandatory arbitration would apply "where the total amount of the claim at the commencement of arbitration is in an amount of $5,000 or less," the amended rule further spelling out that: "In cases where the amount of the claim continues to accrue after the petition is filed the arbitrator shall have jurisdiction to determine all amounts claimed, including those in excess of $5,000."

The trial court felt that Rule 7 governed as it read when Charboneau filed her petitions. The question arises, therefore, which version of Rule 7 applies or, alternatively, whether the amended statute itself governs in this case. We agree with the court of appeals that the amended statute governs.

The legislature, not the court, sets the jurisdictional amount for arbitration. Under section 65B.525, subd. 1, this court only adopts rules for processing claims which come within the jurisdictional amount. To the extent that Rule 7, as it read in October 1987, failed to track the new jurisdictional language of the amended statute, the rule was ineffective. Jurisdiction depends on the arbitration statute as it read at the time the petitions were filed. Consequently, the Charboneau petitions filed in October 1987 were subject to the arbitrator's continuing jurisdiction.

 American Family argues that the mandatory no-fault arbitration system violates its constitutional rights of due process, equal protection, and especially its constitutional right to a jury trial under art. 1, § 4 of the Minnesota Constitution. The court of appeals observed that there might be a constitutional issue involved but did not consider it because it had not been raised. Now, for the first time, appellant asserts in its brief to us, although in abbreviated fashion, various constitutional arguments. We decline to address these new questions because they were not litigated below. Nor was the attorney general notified of these constitutional challenges as required by Minn.R.Civ.P. 24.04 and Minn. R.Civ.App.P. 144.

We affirm the court of appeals. The matter is remanded to arbitrate claimant's wage loss in excess of the $5,000 which was incurred after the petitions were filed.

Affirmed and remanded.