Geraldine PHELPS, Respondent,

v.

**COMMONWEALTH LAND TITLE INSURANCE COMPANY,**
Appellant.

No. C9–94–24.

Court of Appeals of Minnesota.

Aug. 23, 1994.

Elizabeth H. Martin, Michael R. Docherty, Doherty, Rumble & Butler, St. Paul, for appellant.

William A. Moeller, Gislason, Dosland, Hunter & Malecki, New Ulm, for respondent.

Considered and decided by DAVIES, P.J., and LANSING and FORSBERG, JJ.

## OPINION

LANSING, Judge.

In an action brought under the Minnesota Human Rights Act, Minn.Stat. § 363.03, subd. 1 (1992), the district court found unfair age and disability discrimination and ordered damages. We find no error in the court's application of the evidentiary burdens and the evidence supports the finding of discrimination. We also affirm the court's calculation of damages and hold that the court acted within its discretion in doubling the actual damages.

## FACTS

Geraldine Phelps worked as a receptionist for Commonwealth and its predecessor, Title Services, Inc., from 1977 until May 1992. Phelps testified that in addition to financial remuneration, her job was a source of personal fulfillment and she intended to work at Commonwealth until age seventy.

Phelps suffers from recurrent episodes of depression, requiring periods of hospitalization and treatment with medication and electroshock therapy. In February 1992 Phelps began a medical leave of absence from Commonwealth, as a result of depression and medical complications requiring hospitalization. Commonwealth rotated employees from three other departments to cover the receptionist's duties.

In late March or early April 1992, Commonwealth's branch manager in charge of personnel decisions twice telephoned Commonwealth's employment manager to discuss Phelps' absence. During these conversations they discussed the fact that Phelps would turn sixty-five in September 1992.

On May 4 Commonwealth hired Kris Gabbard as a receptionist. Gabbard was twenty years old when she began working for Commonwealth. The parties dispute whether Gabbard was hired as a temporary or a regular, full-time employee.

On May 26 Phelps returned to work. Later that morning Reichow informed her that she was terminated because her receptionist position had been filled by Gabbard. Phelps filed for unemployment compensation benefits and unsuccessfully sought other work. Her depression increased and she required additional medication. She moved to Waseca, Minnesota to stay with her daughter. In July she was rehospitalized for additional electroshock therapy treatments.

## ISSUES

I. Are the district court's findings of fact clearly erroneous?

II. Did the district court misapply the evidentiary burdens when finding age and disability discrimination?

III. Did the district court err in calculating damages or in doubling Phelps' compensatory damages in the absence of a specific finding that Phelps would not be adequately compensated by an award of actual damages?

## ANALYSIS

### I

■ In concluding that Phelps proved age and disability discrimination, the district court relied on key findings about Commonwealth's policies and actions that are disputed by Commonwealth. On appeal we will uphold the district court's findings unless they are clearly in error. *See Feges v. Perkins Restaurants*, 483 N.W.2d 701, 711 (Minn.1992).

■ According to Commonwealth's employee handbook, Phelps could be terminated following a medical leave if her position had been filled by a "regular, full-time employee." The district court found that Gabbard was hired as a temporary employee, and not as a regular, full-time employee, during Phelps' leave of absence. Commonwealth argues that Gabbard was hired as a regular full-time employee during Phelps' absence. Although there is some evidence to support Commonwealth's argument, there is ample evidence in the record supporting the district court's finding that Gabbard was a temporary employee. We particularly note that Gabbard did not complete an employment application, an employee data sheet, or an employment eligibility verification form until after Phelps was discharged.

Commonwealth also argues that the findings of fact were distorted by the district court's improper interpretation of Commonwealth's employee handbook. Commonwealth asserts that the court incorrectly concluded that a "probationary" employee was a "temporary" employee. The record does not support this hypothesis. The court cited the different provisions in the handbook governing temporary employees, probationary employees, and regular full-time employees. The court specifically found that Gabbard was a temporary employee, and did not become a full-time employee, subject to a ninety-day probationary period, until after Phelps had been discharged.

### II

Relying on *St. Mary's Honor Ctr. v. Hicks*, —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), Commonwealth asserts that the district court misapplied the evidentiary burdens when determining that Commonwealth discharged Phelps because of her age and disability, and not for other, legitimate, reasons. In *Hicks* the Supreme Court addressed the burden of each party after a plaintiff has established a prima facie case of discrimination:

"[T]he defendant must clearly set forth * * * reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action. * * * [But] 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff * * *.' "

*Id.* at ——, 113 S.Ct. at 2747 (emphasis omitted).

The Minnesota Supreme Court has not specifically addressed whether *Hicks* amplifies a plaintiff's burden of proving discrimination under the Minnesota Human Rights Act. The district court prudentially addressed Phelps' claims under both *Hicks* and current Minnesota law. The court specifically stated that Commonwealth had presented legitimate, nondiscriminatory reasons for discharging Phelps. The court, however, found those reasons to be unbelievable. In addition, the court found that Commonwealth intentionally discriminated against Phelps.

■ The record contains evidence supporting the finding of intentional discrimination. First, even if the receptionist position had not been filled by a regular, full-time employee at the time Phelps returned to work, it is equally significant for purposes of proof of discriminatory intent that the branch manager represented to Phelps that the job had been filled and there was no longer an opening.

Second, the record indicates that it was Commonwealth's policy to retain the most qualified person for a job. Commonwealth admitted that Phelps was more qualified for the receptionist position than Gabbard. But the branch manager testified that Commonwealth decided to keep Gabbard as the re-

ceptionist without checking her employment file.

Third, the undisputed evidence shows that the two telephone conversations between the branch manager and the employment manager included discussions about Phelps' age. Documentation of the telephone conversations indicates the notation "65," a reference to Phelps' age.

Fourth, the branch manager admitted in her deposition that she had never before hired a full-time replacement for a person on a disability leave. Since 1973, Commonwealth had hired only one full-time replacement for an employee on disability leave, but that employee had been offered a job when she returned.

Finally, the evidence indicates that Gabbard herself took a medical leave of absence several months after she was hired by Commonwealth. At that time, Commonwealth hired a temporary employee to fill the receptionist position. When Gabbard returned from her leave, Commonwealth did not retain the temporary employee, but allowed Gabbard to resume the receptionist position. This evidence is sufficient to demonstrate that Phelps received uncustomary treatment and supports the finding of discrimination.

Commonwealth also argues that the district court erred by substituting its own business judgment for that of Commonwealth. According to Commonwealth, the district court would not have hired a permanent employee to replace Phelps in the receptionist position, and would have fired Gabbard upon Phelps' return to work. This argument, however, assumes that Gabbard was a permanent employee when Phelps returned to work. In fact, the district court found that Gabbard was a temporary employee, and not a permanent employee.

## III

■ The district court awarded compensatory damages of $160,764.66. Commonwealth raises two issues relating to the compensatory damages. The first relates to the

calculation of the actual damages but turns on three issues of fact. Commonwealth first argues that the district court's award of damages for future lost wages was unduly speculative because the court erroneously assumed that Phelps would have worked for Commonwealth until age seventy. This was not an assumption but a finding supported by Phelps' testimony and that of her daughter.

■ Commonwealth also claims that Phelps' ability to obtain other employment should reduce her damages for future lost wages. But Phelps was sixty-five years old at the time of trial and the evidence demonstrates that she had little likelihood of finding another job. As the district court found, Phelps filed for unemployment compensation benefits in May 1992 and had been unable to find employment by October 1993.

■ Finally, Commonwealth argues that Phelps voluntarily moved away from the Twin Cities to Waseca, where there were fewer employment opportunities. The evidence supports the district court's finding that Phelps moved in with her daughter in Waseca after her depression increased following her discharge from Commonwealth.

Commonwealth's second issue relating to damages involves an interpretation of the statute that allows an increase of compensatory damages:

> In all cases where the administrative law judge finds that the respondent has engaged in an unfair discriminatory practice, the administrative law judge shall order the respondent to pay an aggrieved party, who has suffered discrimination, *compensatory damages in an amount up to three times the actual damages sustained.*

Minn.Stat. § 363.071, subd. 2 (1992) (emphasis added).[1]

■ The amount of compensatory damages awarded under this statute is within the discretion of the district court, and we will reverse only when there has been an abuse of discretion. *Melsha v. Wickes Cos.*, 459

---

1. Minn.Stat. § 363.14, subd. 2 provides that in actions brought in district court instead of before an administrative law judge, the court "shall

issue an order directing appropriate relief as provided by section 363.071, subdivision 2."

N.W.2d 707, 709 (Minn.App.), *pet. for rev. denied* (Minn. Oct. 25, 1990). The statute does not specifically state how a district court is to determine whether compensatory damages should be multiplied, and the parties concede that nothing in the legislative history of the statute provides guidance on this question.

■ Commonwealth argues that the district court erred by doubling compensatory damages in the absence of a specific finding that Phelps would not be adequately compensated by an award of actual damages. Some courts have reasonably applied the statutory multiplier to cover uncompensated damages. *Cf. Evans v. Ford Motor Co.*, 768 F.Supp. 1318, 1327 (D.Minn.1991) (court disallowed multiplication of damages because plaintiff had been adequately compensated by other damages). The statute itself, however, does not specifically require findings supporting an award of multiple damages and does not tie multiple damages to uncompensated damages. Although more specific findings aid appellate review, we conclude that such findings are not required to sustain the increased award.

■ Were we to require that multiple damages be tied to uncompensated damages, we would still affirm the district court's multiplication of damages in the present case. Phelps persuasively argues that the following losses would have remained uncompensated by an unaugmented award of compensatory damages: loss of her pension, loss of potential raises, loss of dental insurance, and loss of some medical insurance. Phelps also asserts that her inability to maintain payments on her residence after she was discharged from Commonwealth required her to move and deprived her of the continuity of home and community.

## DECISION

There is no clear error in the district court's findings of fact. We further conclude that there are no errors of law and that the district court acted within its discretion in doubling Phelps' compensatory damages, even though the court did not specifically find that Phelps would not be adequately compensated by an award of actual damages.

**Affirmed.**