Geraldine PHELPS, Respondent,

v.

COMMONWEALTH LAND TITLE
INSURANCE COMPANY,
petitioner, Appellant.

No. C9–94–24.

Supreme Court of Minnesota.

Sept. 8, 1995.

Michael Robert Docherty, Elizabeth H. Martin, St. Paul, for appellant.

William A. Moeller, New Ulm, for respondent.

## OPINION

TOMLJANOVICH, Justice.

Following a finding that appellant Commonwealth Land Title Insurance Company (Commonwealth) violated the Minnesota Human Rights Act (MHRA), Minn.Stat. § 363.03, subd. 1 (1992), the trial court awarded respondent Geraldine Phelps compensatory damages in an amount twice that of the actual damages established at trial pursuant to Minn.Stat. § 363.071, subd. 2 (1992). On appeal to this court, Commonwealth contends the court of appeals erred by finding that the trial court acted within its discretion in doubling the amount of actual damages pursuant to Minn.Stat. § 363.071, subd. 2. We reject Commonwealth's contentions and affirm.

On October 25, 1993, following a trial without a jury, the trial court concluded that Commonwealth discriminated against Phelps on the basis of age and disability. The trial court determined Phelps presented evidence of actual damages totaling $80,382.33. Relying on Minn.Stat. § 363.071, subd. 2, the trial court then multiplied this figure by two and awarded Phelps $160,764.66 as compensatory damages. The trial court did not provide any findings supporting its decision to double the actual damages. Additionally, the trial court awarded Phelps $75,000 for mental anguish and suffering and $42,491.99 for attorney fees and costs. Finally, the trial court awarded the statutory maximum of $8,500 for punitive damages.

On appeal, the court of appeals rejected Commonwealth's argument that the trial court abused its discretion by doubling the actual damages, holding:

[T]he district court acted within its discretion in doubling Phelps' compensatory damages, even though the court did not specifically find that Phelps would not be adequately compensated by an award of actual damages.

*Phelps v. Commonwealth Land Title Ins. Co.*, 520 N.W.2d 748, 752 (Minn.App.1994). In dicta the court of appeals also stated:

Were we to require that multiple damages be tied to uncompensated damages, we would still affirm the district court's multiplication of damages in the present case. Phelps persuasively argues that the following losses would have remained uncompensated by an unaugmented award of compensatory damages: loss of her pension, loss of potential raises, loss of dental insurance, and loss of some medical insurance. Phelps also asserts that her inability to maintain payments on her residence after she was discharged from Commonwealth required her to move and deprived her of the continuity of home and community.

*Id.*

On appeal to this court, Commonwealth contends the court of appeals' conclusion in dicta was erroneous because Phelps did not present any evidence of the losses the court of appeals outlined in dicta. We conclude that the court of appeals did err, however, this was an error in dicta. As such, the existence of this error is irrelevant to the resolution of this case. Commonwealth also renews its argument that the trial court abused its discretion by doubling the actual damages under Minn.Stat. § 363.071, subd. 2.

Minnesota Statutes § 363.071, subd. 2 provides in relevant part:

In all cases where the administrative law judge[1] finds that the respondent has engaged in an unfair discriminatory practice, *the administrative law judge shall order the respondent to pay an aggrieved party, who has suffered discrimination, compensatory damages in an amount up to three times the actual damages sustained.* In all cases, the administrative law judge may

---

1. Minn.Stat. § 363.14, subd. 2 (1994) provides that a court presiding in an MHRA civil action may award the same damages available under section 363.071, subd. 2.

also order the respondent to pay an aggrieved party, who has suffered discrimination, damages for mental anguish or suffering and reasonable attorney's fees, in addition to punitive damages in an amount not more than $8,500.

(emphasis added). Whether a trial court properly doubled the actual damages under Minn.Stat. § 363.071, subd. 2 is reviewed under an abuse of discretion standard. *Melsha v. Wickes Cos.*, 459 N.W.2d 707, 709 (Minn. App.1990), *pet. for rev. denied*, (Minn. Oct. 25, 1990). Commonwealth claims the trial court abused its discretion and makes five arguments in favor of reversal. In addition, Commonwealth argues that inclusion of back pay in the amount the trial court doubled constitutes error.

### I.

■ First, Commonwealth claims the court of appeals' determination that the trial court's multiplication of damages was valid is inconsistent with legislative intent. If a statute is ambiguous, a court may refer to the legislative history surrounding the statute's enactment to ascertain its legislative intent. Minn.Stat. § 645.16(7) (1994). Where the intention of the legislature is clearly manifested by plain unambiguous language, however, no construction is necessary or permitted. *Lenz v. Coon Creek Watershed Dist.*, 278 Minn. 1, 9, 153 N.W.2d 209, 216 (1967). Thus, prior to consideration of legislative history, a determination that subdivision 2 is ambiguous is necessary.

■ A statute is ambiguous if it is susceptible to more than one reasonable interpretation. *Glen Paul Court Neighborhood Ass'n v. Paster*, 437 N.W.2d 52, 56 (Minn.1989); *Tuma v. Commissioner of Economic Sec.*, 386 N.W.2d 702, 706 (Minn.1986) (citing *Beck v. City of St. Paul*, 304 Minn. 438, 445, 231 N.W.2d 919, 923 (1975)); *Arcadia Dev. Corp. v. County of Hennepin*, 528 N.W.2d 857, 860 (Minn.1995), *reh'g denied* (Minn. Apr. 12, 1995). Commonwealth does not contend that subdivision 2 is susceptible to more than one interpretation. Instead, Commonwealth contends subdivision 2 "is ambiguous because it provides absolutely no guidance to trial courts in determining when compensatory damages must be multiplied." This court, in a slightly different context, has said that failure of expression does not give rise to ambiguity. *See State v. Moseng*, 254 Minn. 263, 269, 95 N.W.2d 6, 11–12 (1959) (holding "[w]here failure of expression rather than ambiguity of expression concerning the elements of the statutory standard is the vice of the enactment, courts are not free to substitute amendment for construction and thereby supply the omissions of the legislature."); *see also State v. Wetsch*, 511 N.W.2d 490, 492 (Minn.App.1994) (stating "[a]lthough [appellant] disagrees with the legislative decision to make failure to provide proof of insurance a strict liability offense while including a scienter requirement for failure to provide insurance, his disagreement does not make [the statute] ambiguous"), *pet. for rev. denied* (Minn. Apr. 19, 1994).

■ Subdivision 2 contains no guidelines as to when or under what circumstances a trial court may multiply damages. The absence of guidelines or restraints on a trial court's discretion to multiply damages does not make subdivision 2 ambiguous. In the absence of such guidelines, this court should not manufacture them, that is the province of the legislature. Accordingly, we decline to read into subdivision 2 restrictions or guidelines that the legislature has not included. Instead, we conclude subdivision 2 unambiguously vests trial courts with the discretion to multiply damages.

### II.

■ Commonwealth next argues that the trial court's award is inconsistent with standards articulated by other courts. Having found that subdivision 2 vests the trial court with the discretion to multiply actual damages in an amount up to three times the amount of damages proven at trial, we believe this argument is rendered moot. To the extent that other decisions impose restraints on a trial court's discretion to multiply damages under subdivision 2, these decisions are erroneous. We comment here on at least two decisions that are impacted by our holding today.

In *Melsha v. Wickes Cos.*, the court of appeals interpreted subdivision 2 and concluded:

> It is within the discretion of the trial court to determine whether, in the interests of justice, the actual damages must be multiplied in order for a victim to be fully compensated.

459 N.W.2d at 709. In addition, the Minnesota federal district court, quoting *Melsha*, has held:

> Multiplied damages are permitted so as to provide victims of discrimination with 'full and adequate compensation' in cases when the amount of actual damages proved do not alone achieve that result.

*Baufield v. Safelite Glass Corp.*, 831 F.Supp. 713, 720 (D.Minn.1993) (quoting *Melsha*, 459 N.W.2d at 709).

Commonwealth contends that based on *Melsha*, a trial court must tie the multiplication of damages to a finding that the victim was not fully compensated. Based on our conclusion that subdivision 2 unambiguously vests a trial court with discretion to multiply damages, we further conclude that after an initial finding of damages, a trial court need not make an additional finding that uncompensated damages exist prior to multiplying damages pursuant to Minn.Stat. § 363.071, subd. 2. Thus, Commonwealth's contention that a trial court must tie the multiplication of damages to a finding of uncompensated damages is erroneous, and to the extent that *Melsha* and *Baufield* support this contention, they too are erroneous.

The dissent finds it problematic for a trial court to multiply actual damages beyond those proven at trial without a specific finding that uncompensated damages exist.

█ As the dissent points out, compensatory damages are generally understood to be those damages for which a person has actual losses. However, it is equally well settled that the phrase "actual damages" is generally regarded as a synonym for compensatory damages. *Black's Law Dictionary* 390 (6th

ed.1990). Thus, this court is left to discern what the legislature intends when it states: "a trial court shall award compensatory damages up to three times the amount of actual damages." The dissent concludes that this means the trial court may multiply actual damages only if the trial court makes a finding that uncompensated damages exist. We believe that in the context of this statute, this construction is unsupported by the language of the statute, and could lead to absurd results in practice.

█ In the absence of a statute defining compensatory damages, it is clear that compensatory damages are generally synonymous with actual damages. However, when the legislature has stepped in and defined the elements of damage that will consist of compensatory damage, we believe that the legislature's directive governs. For example, in the context of the Uniform Commercial Code, the legislature has limited compensatory damages to compensation. *See* Minn.Stat. § 336.1–106 (1994) code comment (stating "compensatory damages are limited to compensation. They do not include * * * special damages * * * ").[2] Similarly, we believe, that in this case, the legislature has defined compensatory damages to be an amount up to three times the actual damages proven.

In addition, in practice, the dissent's construction of subdivision 2, tying multiple damages to a finding of uncompensated damages leads to one of two results, both of which are impractical. One possible result would be that a trial court would never be in a position to award uncompensated damages because the actual damages would reflect the sum of the amount a person has lost, thus, there would be no additional damages that could be compensated. In that case, a court could award multiple damages only if it made up damages not alleged or proven at trial. This is precisely the type of *sua sponte* fact finding in which the court of appeals in dicta engaged that we reject. The other possible result of adopting the dissent's construction is that it would provide an incentive to plain-

---

2. In general, compensatory damages "consist of both general and special damages. General damages are the natural, necessary and usual result of the wrongful act or occurrence in ques-

tion. Special damages are those 'which are the natural, but not the necessary and inevitable result of the wrongful act.' " *Black's Law Dictionary* 390 (6th ed.).

tiff's counsel to be sloppy in presenting damages evidence or, worse yet, to lay in the weeds deliberately withholding the evidence and later argue the need for multiplied damages to compensate for all of the uncompensated items.

Each of the potential results illustrates that the dissent's construction could lead to absurd or unreasonable results that would, in effect, render the multiplier provision meaningless. A presumption exists against statutory constructions that lead to absurd or unreasonable results. Minn.Stat. § 645.17(1) (1994). In accordance with well settled statutory construction, therefore, we believe the legislature intended the trial court to be able to multiply at its discretion.

### III.

 Third, Commonwealth contends the trial court's failure to make findings in support of its award of multiple damages is an abuse of discretion. It further claims that this failure and the court of appeals' holding that findings are unnecessary are both inconsistent with *Sigurdson v. Isanti County* where this court stated:

> Because of the significance of factual issues in employment discrimination cases and the attendant deference that must be accorded trial courts in making their determinations on these issues, it is important that the basis for the court's decision be set forth clearly and explicitly so that an appellate court can conduct effective and meaningful review.

386 N.W.2d 715, 721 (Minn.1986).

 This quote reflects the *Sigurdson* court's frustration with a trial court that had failed to make detailed findings in relation to its application of the three-part test articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the *McDonnell Douglas* test, for a trial court to conclude that discrimination occurred, the court must make findings as to each part of the test. In contrast, subdivision 2 does not require a trial court to make any findings prior to multiplying dam-

ages. If the legislature had said damages may be trebled only if the trier of fact determines that actual damages are nominal or uncompensated damages exist, then failure by the trial court to make findings prior to multiplying damages would be error. However, since the legislature has not made findings of any sort a requirement, we conclude that no findings are necessary to support a trial court's decision to multiply damages.

### IV.

 Fourth, Commonwealth and Amici[3] contend that the trial court's award of both punitive damages and double actual damages constituted an unfair double recovery for punitive damages. In support of this contention, Commonwealth cites *Johnson v. Jensen,* 446 N.W.2d 664 (Minn.1989) and Amici cite *Fontaine v. Ebtec Corp.,* 415 Mass. 309, 613 N.E.2d 881 (1993). In both cases the respective supreme courts determined that an award of punitive damages and multiple actual damages were duplicative.

*Johnson* and *Fontaine* are distinguishable from the present case. Under the statute at issue in *Fontaine,* damages could only be multiplied upon a finding of a "knowing or reckless statutory violation." 613 N.E.2d at 889. And under the statute at issue in *Johnson,* damages could only be trebled if the destruction of the trees was not casual or unknowing. 446 N.W.2d at 665. Under both statutes, the findings necessary to multiply damages were similar to the finding of willfulness necessary for the imposition of punitive damages at that time. *See* Minn.Stat. § 549.20, subd. 1 (1988) (stating that punitive damages shall be allowed upon a showing of willful indifference). Thus, an award under these statutes of multiplied damages and punitive damages was essentially a double recovery for punitive damages. By contrast, subdivision 2 requires no additional showing for the imposition of multiple damages. Thus, these cases are distinguishable from the present case.

---

**3.** Amici are Employers Association, Inc., a nonprofit devoted to assisting Minnesota employers with issues involving employee/employer rela-

tions, and The Minnesota Chamber of Commerce.

In addition, although it is unclear what damages are being compensated by the multiple damages provision, that fact alone does not necessarily make the provision punitive and thus duplicative of punitive damages. *See DeJonghe v. E.F. Hutton & Co.,* 171 Ariz. 341, 830 P.2d 862, 866 (App.1991) ("[w]e view this [provision] as akin to the antitrust remedy of treble damages, which is intended not only to compensate for losses and to deter from misconduct but also to encourage private litigants to supplement official enforcement of important criminal laws by providing an inducement for such action."), *pet. for rev. denied,* (Ariz. June 16, 1992). Legislative history indicates that one objective the legislature sought to achieve through enactment of subdivision 2 was the enticement of the private bar into bringing claims based on violations of the MHRA.[4] We conclude, therefore, that multiple compensatory damages are not duplicative of punitive damages where at least one objective of multiple compensatory damages is nonpunitive. Thus, the trial court's award of both punitive damages and double actual damages does not constitute an unfair double recovery for punitive damages.

The dissent believes that any multiplication without a specific finding must necessarily be punitive. We believe that the language of subdivision 2 and other courts' construction of that language indicates that multiple damages are distinct from punitive damages. Subdivision 2 specifically identifies the multiplied damages as compensatory and later indicates punitive damages may also be awarded. As the federal district court of Minnesota noted, although the trebling function in this statute has a deterrent effect, it is primarily a compensatory measure which is made all the more clear by the statute's explicit labeling of the treble damages as "compensatory." *Evans v. Ford Motor Co.,* 768 F.Supp. 1318, 1327 (D.Minn.1991) (stating multiple damages under subdivision 2

"are compensatory in nature"); *see Convent of the Visitation Sch. v. Continental Casualty Co.,* 707 F.Supp. 412, 416 (D.Minn.1989). Thus, by virtue of the statute's language, and as other courts have found, the legislature seemed to intend the multiplying provision to have some other function distinct from punitive damages.

## V.

Commonwealth next asserts a constitutional challenge to subdivision 2. This challenge was not raised at the trial court or the court of appeals. We generally decline to review the constitutionality of a statute if it has not been previously raised. *Charboneau v. American Family Ins. Co.,* 481 N.W.2d 19, 23 (Minn.1992); *Egeland v. State,* 408 N.W.2d 848, 852 (Minn.1987); *In re C.L.L.,* 310 N.W.2d 555, 557 (Minn.1981). In *Cohen v. Cowles Media Co.,* however, we indicated that "on rare occasions [we have] exercised our discretion to allow a party to proceed on a theory not raised at trial." 479 N.W.2d 387, 390 (Minn.1992), *remanded on reh'g,* 481 N.W.2d 840 (Minn. Mar. 17, 1992). We conclude that this is not one of those rare occasions, and decline to consider the constitutionality of subdivision 2.

## VI.

Finally, Commonwealth contends that the trial court erroneously included Phelps' back pay award as part of the amount it doubled. Minnesota Statutes § 363.071, subd. 2 provides in relevant part:

In all cases where the administrative law judge finds that the respondent has engaged in an unfair discriminatory practice, the administrative law judge shall order the respondent to pay an aggrieved party, who has suffered discrimination, compensatory damages in an amount up to three times the actual damages sustained.

---

4. Senator Reichgott articulated the rationale underlying the multiplier provision:

[T]here is currently no incentive for the private bar to take human rights cases on a contingency basis. Punitive damages under the current law are simply very rarely awarded. * * * Secondly, actual damages wound up to be very small. The actual damages are small because oftentimes there has been a mitigation of damages * * *. If you hardly get punitive damages and actual damages are small there is a lack of incentive for the private bar.

Hearing on S.F. 1762, S. Judiciary Comm. 73rd Minn. Leg., March 28, 1984 (audio tape) (comments of Sen. Reichgott, Senate sponsor of the bill).

* * *. In addition to the aforesaid remedies, in a case involving discrimination in

(a) employment, the administrative law judge may order the hiring, reinstatement or upgrading of an aggrieved party, who has suffered discrimination, with or without back pay, * * *.

Commonwealth claims that under the statute back pay is not an element of compensatory damages and thus, should not be included in the calculations of compensatory damages to be multiplied. We disagree. We do not believe the statute precludes the inclusion of back pay as an element of damages that is subject to multiplication. The statute gives a trial court the option of including back pay as a part of actual damages subject to multiplication, or merely awarding back pay attendant to the hiring, reinstatement, or upgrading of an aggrieved party. Thus, we conclude the trial court did not err by including back pay in the amount of actual damages that were subsequently multiplied.

Affirmed.

STRINGER, Judge (dissenting).

I respectfully dissent. I agree with the majority that the operative statute, Minn. Stat. § 363.071, subd. 2 (1994), is unambiguous, clearly stating the legislature's intent. Minn.Stat. § 363.071, subd. 2 provides in pertinent part as follows:

Determination of discriminatory practice. * * * if the administrative law judge finds that the respondent has engaged in an unfair discriminatory practice, * * * the administrative law judge *shall order* the respondent to pay an aggrieved party, who has suffered discrimination, *compensatory damages* in an amount up to three times the actual damages sustained. In all cases the administrative law judge *may also order* the respondent to pay an aggrieved party who has suffered discrimination, *damages for mental anguish or suffering and reasonable attorney's fees,* in addition to punitive damages in an amount of not more than $8,500. Punitive damages shall be awarded pursuant to section

549.20. * * * In addition to the aforesaid remedies, in a case involving discrimination in (a) employment, the administrative law judge may order the hiring, reinstatement or upgrading of an aggrieved party, who has suffered discrimination, with or without backpay * * *.

(emphasis added). These words cannot be more obvious and speak for themselves; there is no room for judicial interpretation. Minn.Stat. § 645.16 (1994); *Arlandson v. Humphrey,* 224 Minn. 49, 27 N.W.2d 819 (1947). I disagree with the majority's conclusion, however, that because the statute does not explicitly require the trial court to provide findings as to how it arrives at its compensatory damages calculation, that the trial court thus has unlimited, unfettered discretion to award "compensatory damages in an amount up to three times the actual damages sustained" without providing any indication as to how it got there. The majority sweeps aside persuasive precedent,[1] ignores the operative term "compensatory damages"—and concludes that anything not punitive must therefore be "compensatory" in nature.

The term "compensatory damages" has a generally understood meaning just as the terms "actual damages" and "punitive damages"—also used in Minn.Stat. § 363.071, subd. 2—have generally understood meanings. *See* Minn.Stat. § 645.08(1) (1994) ("Words and phrases are construed * * * according to their common and approved usage."). *Black's Law Dictionary* defines "compensatory damages" as "such as will compensate the injured party for the injury sustained, *and nothing more;* such as will simply make good or replace the loss caused by the wrong or injury * * *." *Black's Law Dictionary* 390 (6th ed. 1990) (emphasis added); *see also* Restatement (Second) Torts § 903 (defining compensatory damages as "damages awarded to a person as compensation, indemnity or restitution for harm sustained by him"); *Webster's Third New Int'l Dictionary* 463 (3rd ed. 1961) (defining compensatory damages as "damages awarded to make good or compensate for an injury sus-

---

1. *Baufield v. Safelite Glass Corp.,* 831 F.Supp. 713 (D.Minn.1993); *Melsha v. Wickes Cos.,* 459 N.W.2d 707 (Minn.App.1990), *pet. for rev. denied,* (Minn., Oct. 25, 1990).

tained—distinguished from *punitive damages* ").

When civil rights plaintiffs seek "damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts." *Memphis Community School Dist. v. Stachura,* 477 U.S. 299, 306, 106 S.Ct. 2537, 2542, 91 L.Ed.2d 249 (1986) (holding that damages based on the abstract value of constitutional rights are not a permissible element of compensatory damages in action under Civil Rights Act of 1871). "Punitive damages aside, damages in tort cases are designed to provide 'compensation for the injury caused to the plaintiff by defendant's breach of duty.' " *Id.* (quoting 2 F. Harper, F. James, & O. Gray, *Law of Torts* § 25.1 at 490 (2d ed. 1986)).

To that end, compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as "impairment of reputation, * * * personal humiliation, and mental anguish and suffering." * * * Deterrence is also an important purpose of this system, *but it operates through the mechanism of damages that are compensatory—damages grounded in determinations of plaintiff's actual losses. E.g.,* 4 Harper, James & Gray, *supra* at § 25.3 (discussing need for certainty in damage determinations); D. Dobbs, *Law of Remedies* § 3.1, pp. 135–136 (1973). Congress adopted this common-law system of recovery when it established liability for "constitutional torts."
*Id.* (citations omitted) (footnotes omitted) (emphasis added). "[T]he basic purpose" of civil rights damages is "to compensate persons for injuries that are caused by the deprivation of constitutional rights * * *." *Carey v. Piphus,* 435 U.S. 247, 254, 98 S.Ct. 1042, 1047, 55 L.Ed.2d 252 (1978) (emphasis

added); *see also id.* at 257, 98 S.Ct. at 1049 ("[D]amage awards under § 1983 should be governed by the principle of compensation.").

The statutory scheme established by the legislature pursuant to Minn.Stat. § 363.071, subd. 2 is simple and direct: victims of unfair discrimination shall be awarded a monetary amount to compensate them for their injury, however, this amount shall not exceed three times the amount of actual damages sustained by the victim. The trial court is required to make a determination as to the victim's actual damages, as the trial court did here, and then determine the additional amount the discrimination victim must receive in damages in order to be fully compensated for the injury sustained. This, the trial court did not do. These additional damages cannot be a guess or a number pulled out of the air any more than a court cannot award damages in an ordinary tort or contract claim without some articulated basis for the damage award. *See, e.g., Leoni v. Bemis Co., Inc.,* 255 N.W.2d 824, 826 (Minn.1977) (holding that "damages which are speculative, remote, or conjectural are not recoverable" and requiring proof of a reasonable basis upon which to approximate damages award). In the absence of specific findings as to the injury to be compensated and the amount of damages necessary to compensate that injury, I can only conclude that where the trial court doubled the actual damages without reason or explanation, it in effect awarded punitive damages.[2] Under the MHRA, a separate punitive damages provision exists for this purpose, statutorily capped at $8,500. Minn.Stat. § 363.071, subd. 2. Therefore, I disagree with the conclusion of the majority that the trial court's award of double actual damages plus punitive damages did not improperly award double punitive damages.

**2.** Further, the majority's resort to analogy with provisions for mandatory trebling of damages in antitrust actions, citing *DeJonghe v. E.F. Hutton & Co.,* 171 Ariz. 341, 830 P.2d 862 (App.1991), *pet. for rev. denied,* (Ariz., June 16, 1992), is wholly misplaced. Treble damages are mandated by statute in antitrust actions specifically as both a punitive measure, and a means of deterring such violations by encouraging private plaintiffs to bring suit. *See, e.g., Blue Shield of Virginia v. McCready,* 457 U.S. 465, 472, 102

S.Ct. 2540, 2544, 73 L.Ed.2d 149 (1982); *Texas Instr. v. Radcliffe wrterials, Inc.,* 451 U.S. 630, 639, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981); *Reiter v. Sonotone Corp.,* 442 U.S. 330, 344, 99 S.Ct. 2326, 2333–34, 60 L.Ed.2d 931 (1979). The treble-damage provisions of the antitrust laws do not provide the trial court with discretion to determine the multiple of damages appropriate to achieve its goals. *Compare* Clayton Act, 38 Stat. 731, § 4 (1992); Minn.Stat. § 325D.57 (1994).

Finally, I disagree with the majority's conclusion that the trial court properly included backpay in its determination of compensatory damages. Again, the statute speaks clearly and without ambiguity: *"In addition to the aforesaid remedies,* in a case involving discrimination in * * * employment, the administrative law judge may order the hiring, reinstatement or upgrading of an aggrieved party, who has suffered discrimination, *with or without backpay* * * *."* Minn.Stat. § 363.071, subd. 2 (emphasis added). It is difficult to imagine how the statutory scheme of remedies could be clearer: a claimant under the MHRA is entitled to the general "aforesaid remedies" accorded all victims of discrimination under the MHRA, and, in addition, if the claimant is specifically a victim of employment discrimination, then the claimant may also be entitled to an award of backpay and other job related remedies.[3] To sweep the specific remedy of backpay into the general category of damages, as the majority does, rewrites the legislature's remedial scheme.

I would reverse and remand for further proceedings.

---

**3.** Similarly, victims of housing discrimination also have specific remedies available in addition to the general remedies cited. *See* Minn.Stat. § 363.071, subd. 2(b).